116   890
p118 1001

(41 South. 198.)

No. 15,820.

HOLLIDAY v. HAMMOND STATE BANK et al. (CALMES, Intervener).

(March 26, 1906.)

1. DEPOSITARIES—CONTRACT—CONSTRUCTION— LIABILITIES.

Where real estate is sold by authentic act, but the buyer does not take possession under the act, and the price, instead of being paid, is deposited in bank subject to the condition that it shall not be paid to the vendor until the title shall have been examined and found to be good, the money so deposited is, alike, placed.

beyond the control of the purchaser, and withheld from the seller, and the bank, not having been advised by both parties of either, the failure or the fulfillment of the condition, the purchaser has no right to draw the money, and the seller has no right to demand that it be turned over to him and the bank incurs no liability for damages for refusing to honor the check of the purchaser therefor.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Depositaries, §§ 3, 9, 11.]

2. SAME.

Where the purchaser of real estate has signed the completed act of purchase, but does not take possession thereunder, and, instead of paying the price, by agreement with the seller, deposits the same in bank, subject to the condition that it shall not be paid to the latter until the title to the property shall have been examined and found to be good, and where it appears that there is a defect in the title, of which the purchaser was informed, when the act was signed by him, and which it was the purpose of the agreement and the deposit to give the seller a reasonable opportunity to cure. *Held*, that the money cannot be withdrawn by the purchaser, without the consent of the seller, until such reasonable opportunity shall have been exhausted.

3. SAME—EVIDENCE OF AGREEMENT.

Where money has been deposited in bank to await the result of the examination of a title to real estate, a completed act of sale of which has already been signed, and suit is brought against the bank for its recovery by the purchaser, and by the seller intervening and claiming it as the purchase price of the property sold by him, the objection urged on behalf of the bank and of the intervener that the purchaser cannot prove by parol the circumstances under which the deposit was made, because he would thereby contradict the recital in the act of sale, to the effect that the sale had been made for cash in hand paid, is one which, under the circumstances, neither the bank nor the intervener has any standing to urge.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliot, Judge.

Action by L. H. Holliday against the Hammond State Bank. Dallas L. Calmes intervenes. Judgment for defendant and intervener, and plaintiff appeals. Judgment reversed and rendered.

William Hutchinson McClendon and Warren Moses Wright, for appellant. Stephen Dudley Ellis and Reid & Purser, for appellees.

### Statement of the Case.

MONROE, J. Plaintiff alleges that he had an account as a depositor in the Hammond State Bank herein named as defendant; that, on November 9, or 10, 1904, he deposited to the credit of the said account, and subject to his check, $4,950, in the shape of New Orleans Exchange, payable to the order of the Hammond State Bank, and that on the same, or the following, day he deposited a similar draft for $1,000; that, on November 25, 1904, there being then to the credit of the said account the sum of $7,075.10, he drew his check for $5,950 against the same, upon which payment was demanded and refused, and the check was protested for nonpayment, and that he thereby sustained damage to his credit, etc., in the sum of $1,707.50, plus the cost of protest. He therefore prays for judgment against the bank for the full sum of his deposit, and for the damages alleged.

Dallas L. Calmes intervenes, and alleges that plaintiff paid him for an option on certain property in the town of Independence, the sum of $50, but that he subsequently concluded to buy, and did buy, a farm owned by intervener, for the sum of $5,000, of which the $50 paid was regarded as part, and that for the balance of $4,950, plaintiff caused the Bank of Independence to send its New Orleans exchange to the Hammond State Bank, defendant herein, and instructed said defendant to place the same to the credit of intervener; that thereafter plaintiff becoming dissatisfied with his purchase offered intervener an additional $1,000 for the town property, which offer was accepted, and that the act of sale for the farm was destroyed, and an act conveying the town property prepared and executed (the price, at the request of the plaintiff, being stated at $5,000, instead of $6,000); that after giving intervener a check for $1,000, plaintiff asked that it be returned to him, stating that he preferred to give exchange such as he had already caused

·to be sent to the defendant (i. e., New Orleans ·exchange, payable to the order of the Hammond State Bank), and that, his request being complied with, plaintiff gave intervener ·the draft for $1,000, which intervener delivered to the Hammond State Bank, where it was placed to the credit of intervener's account. He alleges that the act of sale of ·the town property was duly recorded; that he moved his family out from the property, and that the plaintiff took and has retained possession thereof. He alleges that plaintiff afterwards offered him $250, and then $500, to rescind· the sale so made, and that the offers were refused; that plaintiff drew the check referred to in his petition on the Hammond State Bank well knowing that he had no funds there, and that intervener is entitled to have the purchase price of the property sold by him as aforesaid, which is in said bank, decreed to belong to him. Wherefore he prays that plaintiff and defendant be cited, and, after due proceedings, that he have judgment decreeing him to be the owner of and entitled to the $5,950 deposited in the said Hammond State Bank, as set forth in plaintiff's petition.

The defendant bank admits that the check referred to in the petition was refused payment, and alleges that it was so refused because plaintiff had not sufficient funds on deposit to meet it. It denies that it received ·drafts on New Orleans for $4,950 and $1,000 for account of plaintiff, as alleged in the petition, and denies that plaintiff had on deposit, upon the day upon which the check was refused payment, the sum of $7,075.10, but avers that he had to his credit on that ·day the sum of $1,125, which defendant was and is ready to pay upon a proper check. It alleges that plaintiff's suit is frivolous and malicious, and prays that it be dismissed. The plaintiff, for answer to the intervention ·of Calmes, admits the payment of $50 for ·an option on intervener's farm, at $5,000, and

the execution, on November 9th, of the deed to the farm, and he alleges that on the date mentioned he deposited $4,950 in the Hammond State Bank with instructions to the president that the same should be held subject to his order, pending an investigation of the title, and that the option was then canceled, the $50 paid therefor to go in payment of the purchase price. He admits that on November 10th the sale of the farm was rescinded, and that a deed was executed whereby the intervener sold him certain town property for $6,000, and he alleges that it was agreed that to the $4,950 deposited there should be added $1,000, and that the whole amount should be retained by the bank until the title to the property should have been investigated and found good, in which event it should be paid to the intervener; but that, should said title be found defective, the sale should be rescinded and the $50 paid returned, and that, in accordance with said agreement, he deposited the additional $1,000, and instructed the bank to hold the same subject, with the $4,950 already received to his further instructions. He alleges that the sale in question was never completed for the reason that its completion was dependent upon the result of the examination of the title, and that the title proved to be defective, in this, to wit: That the property had been acquired by David Y. Gaines whilst married, under the régime of the community, to the. widow Bennett, who died, leaving children and grand children, and that the interest of Gaines therein had been sold after the death of his wife, but that the interest of her heirs had never been devested, and that a number of them, whose names are given, reside in the parish. He alleges that he informed intervener of the situation, and that intervener suggested that a further investigation be made, after which, if the title proved to be defective, he would consent to rescind the sale; that further investigation

was made, with the same result as before, but that intervener refused to rescind the sale. Plaintiff admits that he took possession of the property, but alleges that he did so for the benefit of all concerned, and without waiving his rights; that, since the filing of the petition herein, certain mortgages which had been resting thereon in favor of the defendant have been canceled, as of date November 14, 1904; that since the filing of the intervention herein, a petitory action has been brought against him by the heirs of Mrs. Gaines for the recovery of their interest in said property and that the defects of the title are such that he is not bound to accept it, but is entitled to have the sale rescinded, and to recover his expenses in the way of attorney's fees and the damages to which he has been and will be subjected in the matter, as also the $50 paid for the option; and he prays for judgment accordingly. The defendant, answering the intervention, admits that it received the two drafts described therein, and that it placed the proceeds to the credit of the intervener, "by his instructions and request and, as respondent is informed, by agreement with Mr. Holliday." We find the following to be the facts as disclosed by the record, to wit: On November 4, 1904, the plaintiff, Holliday, paid the intervener, Calmes, $50 for the privilege of buying, within 30 days, for $5,000, certain property owned by Calmes in the town of Independence; in other words, he obtained an option on the property at the price stated, with the understanding that in the event of his becoming the purchaser, the $50 so paid was to be credited on the price. He then employed W. B. Kemp to examine the title, and on November 9th, he and Kemp and Calmes met at Independence, and Kemp reported that the title was not clear because of a missing power of attorney, which was needed in connection with one of the sales, and because the property had been purchased by D. Y. Gaines whilst living under the régime of the community, and sold by him, after the death of his wife, without regard to the rights of her heirs. After some negotiation it was agreed that, instead of buying the town property, Holliday should buy (for the same price and subject to the same conditions, including the condition that the title should prove satisfactory) a farm which Calmes owned a short distance from the town, and an act of sale thereof was accordingly prepared and signed, and in order to protect himself with respect to the title and at the same time show his good faith and ability to pay the price, Holliday obtained from the Bank of Independence its draft for $4,950 on the State National Bank of New Orleans, payable to the order of the Hammond State Bank (defendant), which draft he forwarded by mail to the Hammond State Bank with instructions (given by Mr. Kemp, on behalf of Holliday, through the telephone) that the proceeds were to be held to await the examination of the title, and were, on no account, to be paid out until further instructions should be received from the depositor, in all of which the bank acquiesced. By the following day (November 10th) Holliday had found that his family did not take very kindly to the idea of living on the farm, and he offered Calmes $500 to rue the bargain, which offer Calmes declined. There was then some further negotiation, and finally Holliday agreed that in order to get released from the obligation to buy the farm, he would pay $6,000, instead of $5,000, as had been previously agreed, for the town property, always subject to the condition that, upon further examination, the title should prove to be good. The deed to the farm was therefore destroyed, and an act of sale conveying the town property from Calmes to Holliday was drawn up and signed, and Holliday gave Calmes his check, payable to the order of the latter, for $1,000; but, an hour or two later, stated

to him that he had made a mistake in so doing and requested him to return the check, which Calmes did, and Holliday, then, obtained from the Bank of Independence a draft similar (in all other respects save as to the amount) to that which he had obtained upon the day before, and gave it to Calmes to be mailed or delivered to the Hammond State Bank, with instructions that the proceeds were to be held with and subject to the same conditions as the $4,950 already on deposit, to wit: that it was not to be paid out until the depositor (Holliday) reported that he was satisfied with the title of the property of which it was, in that event, intended to be the purchase price. The bank, however, held Calmes' notes, secured by mortgages on both the town property and the farm and, being no doubt desirous of facilitating the sale in order that it might realize, on November 14th, sent the notes to the mortgage office with instructions to the recorder to cancel the mortgages by which they were secured, but, it, at the same time, observed the precaution of taking from Calmes a new note for the whole amount due by him, secured by a new mortgage, which it held, and still holds.

It may be remarked, en passant, that the letter, addressed to the recorder of mortgages was mislaid by that officer, and that the bank's mortgages were not really canceled for a month or six weeks. In the meanwhile several propositions and counter propositions had passed between Holliday and Calmes, and, finally, towards the latter part of November, they met in the office of one of the counsel, whom Holliday had consulted, and who states the result of the interview as follows, to wit:

"They, then, made an agreement of which I made a memorandum in lead pencil, and read it to them after I had written it down * * *, and they agreed that it should be the basis for their settlement and Mr. Calmes instructed Mr. Holliday and myself to have Mr. Lillie write up a contract in accordance with the terms of

116 La.—29

that memorandum, which I had made, and to bring it to Independence and he would execute it."

The memorandum and the projet of contract (prepared by Lillie, who is the president of the defendant bank, and has acted for it in all this business) are in the record, and the projet, drawn in conformity to the memorandum, reads in part as follows:

"That whereas there has been a dispute relative to the title to property in the town of Independence, La. * * *, which property said Calmes had conveyed to said ·Holliday for $5,000 cash, the money being deposited in the Hammond State Bank, to be paid over whenever both of the parties had mutually agreed; * * * now, therefore, the said Calmes agrees to release said money, now in the bank, which shall remain there subject to the order of Holliday whenever titles are completed as hereafter set forth. The said Calmes agrees to execute a contract with said Holliday for the sale of the same property, * * * for the price of $6,000, said contract to stipulate that a clear warranty title shall be given, free from any lien or incumbrances, and, especially against any claim, right or title arising out of the Gaines heirs, so called, over which the present controversy arises, said title to be completed and deed to be delivered on or before six months from this date. Said Holliday agrees to make a present quitclaim deed to said Calmes for all right, title, and interest he may now have in said property from said first original act, with full warranty as to his own acts in the premises. Said Holliday to have immediate possession, with full use of the same, and, in the event of a failure to make title, free from all liens and incumbrances and defects, within the time here agreed, then said property to be surrendered up to the possession of said Calmes in as good condition, as when taken, reasonable use and wear thereof excepted, and without rent or charge. Said Calmes agrees to bear all expenses which have now been incurred or which may be incurred in the investigation of said title made as herein provided."

The agreement with reference to this instrument took place at Hammond on November 23, 1904, but Calmes said that he was unable to wait for it to be drawn up and that it could be brought to him, later, at his house, at Independence (some six miles distant). When, therefore, it was prepared, Holliday took it to him, at his home, and presented it for signature, but Calmes, acting under the advice of his counsel who was there present, refused to sign it, and subse-

quently moved away, leaving the house vacant. Thereupon Holliday, by the advice of his counsel, with a view to its protection from fire, depredators, etc., and to the minimizing of the loss, for the benefit of whom it might eventually concern, and after notice to Calmes of his intention and of the reservation of his rights, took, and has since retained possession. Holliday, then, in December, drew his check on the defendant bank for $5,950, which was refused payment (the fact being that exclusive of the amount which had been deposited under the agreement with Calmes, he had to his credit but $1,125.10). He then brought this suit, and whilst it was still pending, a petitory action was brought against him and Calmes by some of the heirs of Mrs. Gaines (entitled Preston Bennett et als. v. D. L. Calmes et al., 40 South. 911), for the recovery of the property, which action, for the purposes of the argument in the district court, was consolidated with this and was decided in favor of the defendants, and the judgment so rendered is this day affirmed by this court. Not all of the heirs of Mrs. Gaines joined in that suit, however. That lady, it seems, was twice married, and had nine children by her first husband, Bennett, and two by her second husband, Gaines. One of the Bennett children (Alex) died a number of years ago leaving five children who were all minors when this case was tried, and whilst as to the suit of the other heirs, the plea of the prescription of 10 years was maintained; the judge a quo seems to have been of the opinion that such plea would not be good as to the minors. In the opinion which we find in the record, he says (inter alia):

"There is a suit in this court, however, entitled David R. Robertson, Tutor vs. D. L. Calmes et als., * * * which has not been tried, and which one of the counsel in this case on behalf of the defendant and intervener admitted that prescription had not run against heirs of Alex Bennett the minor heirs. * * * But their interest in the land is but $1/10$ of $1/2$ * * * too small to justify dissolving the sale

on that account. But I will treat their action as a demand in warranty, made by Holliday against Mr. D. L. Calmes."

The judgment which is the subject of the present review accordingly reads, in part, as follows, to wit:

"It is ordered * * * that there be judgment in favor of the defendant, Hammond State Bank, and against plaintiff, L. H. Holliday, rejecting plaintiff's demands. It is further ordered * * * that intervener, Dallas L. Calmes, have * * * judgment * * * against plaintiff * * * and defendant * * * in the sum of $6,000 of which amount, $450 shall remain in the custody of the Hammond State Bank to abide the result of the suit entitled David R. Robertson, Tutor, vs. D. L. Calmes et als., No. 641 of the docket of this court, the same or so much thereof as may be necessary to be used in defraying and recouping plaintiff, * * * for such expenses and damages as may be decided to be due him on account of said suit No. 641, and to be delivered to him at the termination of same. The part thereof not so used to be delivered * * * to said Dallas L. Calmes at the termination of said suit; the said sum of $6,000 being the purchase price of a tract of land involved in the suit of Preston Bennett et als. vs. Dallas L. Calmes et als., No. 581, of the docket of this court, and sold by said Calmes to Holliday It is further ordered that said plaintiff, L. H. Holliday, pay all costs of this suit."

### Opinion.

Counsel for the defendant and for the intervener (who have joined in the same brief) objected on the trial, and urge the objection here, that parol evidence was inadmissible to contradict the recitals of an authentic act, and hence that it was incompetent for the plaintiff to prove by parol evidence that he had not paid the price for the property purchased by him. The issue between the plaintiff and the defendant (pretermitting plaintiff's claim for damages) is whether the defendant has made a proper disposition of the sum of $5,950, which the plaintiff deposited with it, and upon that issue the question of the plaintiff's right to contradict the act of sale from Calmes to him has no immediate bearing, since, if the defendant turned the money deposited with it by the plaintiff over to Calmes, as in payment of the price of the property sold by him with-

out authority from plaintiff, it is liable to him for the injury that he may thereby suffer. As to the intervener; he has interfered in a controversy which, if he has been paid for his property, does not concern him. Upon the other hand, if the money which he and the plaintiff are seeking to recover from defendant, and for which he has obtained judgment against both defendant and plaintiff, is a particular sum deposited by plaintiff with defendant, subject to the condition that it should be turned over to the intervener in payment of the price of his property, when and if the title to that property should be found good, and not otherwise, then the intervener is here attacking the act of sale invoked in behalf of the objection urged by his counsel, which act contains the recital:

"Personally, * * * came and appeared Dallas L. Calmes * * * who declares that for and in consideration of the price * * * of $5,000 cash in hand paid, the receipt whereof is hereby acknowledged and good acquittance and discharge given for the same, he did and does sell * * * unto Lawrence H. Holliday," etc. [describing the property which is the subject of this litigation]."

We are therefore of opinion that the objection is inapplicable to the case, and if otherwise applicable that neither the defendant nor the intervener have any standing to urge it on the merits; having found as a fact that the money here claimed was deposited by plaintiff, with the defendant, as representing the price of the property which he had purchased from the intervener, and subject to the condition that it should not be paid to the intervener unless, and until defendant should be advised by plaintiff that he had found the title to the property to be good; and, having also found that intervener was a party to and accepted the benefit of the contract so made, we conclude that the negative condition upon which the deposit was made; i. e., that the money should not be paid to intervener unless and until, etc., was pregnant with the affirmative, that the money should be paid upon the fulfillment of the condition, and hence that the purpose and effect of the deposit was to place the money beyond the control of plaintiff, and, at the same time, to withhold it as a payment of the price of the property, from intervener; from which it follows that the money was not subject to plaintiff's check at the time that the check was drawn, and that plaintiff, therefore, sustained no injury by reason of its nonpayment; and, since the title to the property has not been cleared, that the money was not, and is not, subject to the demand of intervener, as that demand is here made.

The case differs from those in which title having passed merely by public adjudication, and, the adjudicatee not having paid the price or otherwise accepted title or possession, it has been held that he could cause the sale to be rescinded by showing the existence of an adverse outstanding title. Pont. R. R. Co. v. Durel, 6 La. 484. It also differs from cases in which the purchaser, having accepted the title, and paid part of the price, and having taken and enjoyed possession, as owner, it has been held that he had no standing to sue for a rescission of the sale merely because of his discovery of defects in the title. Rousseau v. Tete, 6 Rob. 471.

In the instant case the plaintiff was informed of the defect in the title, and hence of the danger of eviction, before signing; but he nevertheless signed, and accepted title by notarial act. He, however, stopped at that point, and did not pay the price; nor can it be said that he took such possession as to affect the rights which he now asserts —his taking possession having been a commendable act, advised by his counsel, the announced and only purpose of which was to minimize the threatened loss, which, had he done otherwise, might have proved serious, and which sooner or later must have fallen either upon him or defendant. Under the circumstances the case of the plaintiff would fall within the exception (relating to those

116 LOUISIANA REPORTS.

who buy, knowing the defects in the title to the property) contained in the last paragraph of Civ. Code, art. 2557, and he would not be entitled to withhold the price were it not for the agreement between him and the intervener upon that subject which is the law of the case, and, as a result of which, the amount representing the price was deposited in bank. We are of opinion that the meaning of that agreement was that the intervener should have a reasonable opportunity to clear up the title, and it stands as a substitute for the provisions of the law (Civ. Code, art. 2558) under which, if there had been no agreement, the intervener might have demanded that the price of the property be paid him on his giving security, or, if he were unable to give security, that it be deposited subject to the order of court until he should have caused the disturbance of the title which he had conveyed to plaintiff to cease. Civ. Code, art. 2557. As matters stand, one cause of disturbance is removed by the judgment this day rendered in the case of Preston Bennett et al. v. D. L. Calmes et al., 40 South. 911.[1] Whether the remaining cause (the claim of the minors Bennett) will be removed by the termination of the litigation in which it is at issue, it would be premature to decide; but, under his agreement, plaintiff should be required to await that event before being allowed to withdraw, without the consent of intervener, the money deposited as the price of the property purchased by him, and intervener should be allowed, in the meanwhile, to remove the disturbance in some other way if he thinks proper.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and, proceeding to render such judgment as should be rendered in the case, it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Lawrence H. Holliday, and against the defendant, the Hammond State Bank, for the sum of $1,125.10, with legal interest thereon from judicial demand until paid; that the demand of the plaintiff for the further sum of $5,950, deposited by him in said bank be dismissed as in case of nonsuit, and that all further demands of the plaintiff against said defendant, save as may be hereinafter specified in this decree be rejected. It is further adjudged and decreed that the demands of the intervener, as against defendant and plaintiff, respectively, and the demands of plaintiff against the intervener, save as may be hereinafter specified in this decree, be rejected. It is further adjudged that there be judgment in favor of the plaintiff and the intervener, on their respective demands against each other, and against the defendant, to the effect that the defendant holds as a deposit the sum of $5,950 for which execution may issue at the instance of the plaintiff and intervener, acting together, or which, acting together, they may withdraw, but which is otherwise to be held by the defendant to await the final decision of the court in the case of David R. Robertson v. D. L. Calmes, et al., now pending in the district court; said sum to be paid by defendant to intervener in the event that by such judgment the property purchased by plaintiff is cleared of the claim of the plaintiffs in said suit, and to be paid to the plaintiff herein in the event that said property is not so cleared of said claim, and is not cleared by intervener, by paying or settling the same before or after judgment. It is further adjudged and decreed that the costs incurred in the district court on the main demand be paid by the defendant; those incurred in the prosecution of the intervention by the plaintiff (Holliday), and that the costs of the appeal be paid by the defendant (bank) and the intervener.

[1] Ante, p. 598.