LAND, J.
In Holliday v. Hammond State Bank et al. (Calmes, Intervener), 116 La. 890, 41 South. 198, it was adjudged that the deposit of $5,950 in the Hammond State Bank be held by that institution to await the final decision of the court in the case of David R. Robertson v. D. L. Calmes et al. pending in the district court, and it was further decreed -that:
“Said sum be paid by defendant to intervener in the event that by such judgment the property purchased by plaintiff is cleared of the claim by the plaintiffs in said suit, and to be paid to the plaintiff herein in the event that said property is not cleared of said claim, and is not cleared by the intervener by paying or settling the same before or after judgment.”
After the decision of this court in said cause, Calmes offered to Robertson, tutor, $250 “by way of compromise” of the claims of the minors represented by him. Thereupon the tutor presented a petition to the court, representing that the claim of the minors to one-twentieth interest in the property sold by Calmes to Holliday was in litigation; that their said interest had been appraised at $250 in the inventory of the tutorship, but was subject to Calmes’ right to claim reimbursement for necessary improvements; that the tutor had been offered $250 by way of compromise, and believed that it was for the best interest of the minors that said offer should be accepted. Wherefore the tutor prayed for the convocation of a family meeting to advise thereon.
An order was granted by the clerk of .the district court for the family meeting, which was held before the same official acting as ex officio notary public. The meeting advised that the offer of compromise and sale be accepted for the purpose of avoiding the risk, costs, and annoyance of litigation, and to effect a partition, and authorized the tutor to transfer the interest of the minors at its appraised value of $250 at private sale to Calmes and Hoover and those holding title under them to any interest in the real estate in question. The members assigned the following reasons for their advice, to wit:
“Because we believe, by this compromise and private sale of the minors’ interest to effect a partition, the minors will receive more money for their interest in the property than they would if the present litigation was continued with success [with] the resultant proceedings for a partition.”
The undertutor was present, _ and signed and approved the proceedings, which were subsequently homologated by judgment of the court, and the tutor authorized to sell at private sale the interest of the minors in the property for not less than $250, and to execute the necessary title. This judgment was rendered and signed by the clerk of the court. Thereupon the tutor, joined by one of his former wards, who had become of age, conveyed said interest in said property to Calmes and Hoover, pursuant to the ad *1003 vice of the family meeting and the judgment of the court.
Then Calnies presented a petition to the court, reciting the foregoing proceedings, and praying for a rule on Holliday to show cause why he should not accept the title as perfected, and why the sum of $5,950 deposited in the Hammond State Bank should not be paid over to the plaintiff in rule. The bank took notice of the rule.
For answer to the rule the defendant therein pleaded that the clerk of the court was without authority to authorize the sale of minors’ property at private sale, that the exercise of such a power is a judicial function, and that any statute which purports to authorize the clerk to make such orders is violative of articles 16 and 84 of the Constitution-of the state. The answer further avers that minors’ property cannot be sold at private sale except for the purpose of making a partition, and that the alleged sale was not a sale for a partition, but an outright sale for money, and conveyed no title to Calmes and Hoover.
The rule was made absolute on June 4, 1906, and the defendant therein took a devolutive appeal on August 30,1906.
The answer to the rule raises two questions, which we shall proceed to discuss in their logical order.
1. In Lemoine v. Ducote, 45 La. Ann. 857, 12 South. 939, it was contended that Act No. 43, p. 54, of 1882, authorizing clerks of court to homologate the proceedings of family meetings, was null and void as conferring judicial powers, in violation of articles 92 and 122 of the Constitution of 1879. The court, however, held that said statute was not unconstitutional, as the duties imposed on the clerk by its provisions were merely ministerial and mandatory, and did not involve the exercise of judicial functions. The act of 1882 must be construed to-day as it was in 1893.
We cannot appreciate the force of the contention that Act No. 106, p. 134, of 1880, and Act No. 43, p. 54, of 1882, defining the duties of clerks throughout the state, the parish of Orleans excepted, are inoperative because in derogation of Act No. 25, p. 47, of 1878, and article 340 of the Civil Code, providing that the proceedings of family meetings shall be homologated by the judge. If there be a conflict, so much the worse for the prior statutes. But there is no conflict or repugnancy, as the later statutes do not derogate from the powers of the judge, but simply provide that certain duties attached to the judicial office may be exercised by the clerk of the court.
Article 122 of the Constitution of 1879 empowered the Legislature “to vest in clerks of courts authority to grant such orders and to do such acts as may be deemed necessary for the furtherance of the administration of justice.” Article 123 of the Constitution of 1898 contains the same provisions. Hence the legislation of 1880 and 1882 vesting in clerks of court authority to grant certain orders, quasi judicial in their nature, was clearly authorized by the organic law.
2. The only proposition submitted to the family meeting was the question whether the proferred compromise of the minors’ law suit should be accepted. The meeting so advised, but on its own motion also advised that the property be sold at private sale for the purposes of effecting a partition. As the compromise would of itself have divested the interest of the minors in the property, the advice that the property be sold to effect a partition was mere surplusage. The sale, under such conditions, was mere formal evidence that the compromise had been executed and the minors’ interest divested. That the tutor may compromise respecting the rights of the minor, -with the authority of the judge, granted on the advice of a family meeting, is a necessary inference from the provisions of articles 353 and 3072 of the Civil Code. The *1005 compromise has the force of the thing adjudged between the minors, who were the plaintiffs,, and Hoover and Calmes and Holli■day, who were the defendants, in the suit which was terminated by the transaction. Civ. Code, art. 3078.
Judgment affirmed.