15 So.2d 891

PRYOR et al. v. DESHA et al.

No. 36964.

Nov. 8, 1943.

Anders & Anders, of Winnsboro, for defendants and appellants.

J. R. Dawkins, of Farmerville, and Robert H. Wimberly, of Arcadia, for plaintiffs and appellees.

ODOM, Justice.

This is a suit to partition 580 acres of land, all in one tract or body. The land was acquired by Jesse S. Pryor, who died intestate on January 5, 1913. He was survived by his wife, Mrs. Carrie Wade Pryor, and five children, issue of the marriage, all now living. The land was acquired during the marriage and therefore fell into the community. It is now owned in indivision, and in the proportions named, by the following persons: ½ by Mrs. Carrie Wade Pryor, the widow, and 1/10 by each of the following named children: Blanche, now Mrs. Desha; Debet, now Mrs. Hempel, and Georgia, Wade K., and James T. Pryor.

The suit for partition was brought by the widow and Wade K. Pryor, one of the children. They alleged that they were not willing to remain any longer co-owners in indivision of the land, that it could not be conveniently divided in kind, and prayed for judgment ordering it sold for cash in order to effect a partition.

The other four children, all made parties, filed several exceptions, some of which were overruled and some seem to have been abandoned. The ruling of the trial judge on the exceptions is not now contested.

The defendants, Mrs. Blanche Pryor Desha and Miss Georgia Pryor, who were majors at the time their father died, filed answer, in which they admitted the ownership of the property as alleged by plaintiffs, and denied plaintiffs' allegations that the property could not be conveniently divided in kind. They specifically alleged that it could be conveniently divided in kind and prayed for judgment ordering it so partitioned.

The other two defendants, James T. Pryor and Mrs. Debet Pryor Hempel, who were minors on the date of their father's death and were later represented by their mother, who qualified as their tutrix, filed a separate answer and alleged, as did the defendants Georgia Pryor and Blanche Pryor Desha, that the property could be conveniently divided in kind, and prayed for judgment ordering it so divided.

These two defendants, James T. Pryor and Mrs. Hempel, by way of answer, and therefore collaterally, attacked certain sales of their interest in portions of the real estate which their father owned at the time of his death, which sales were made during their minority by their mother, acting as their natural tutrix. They alleged that at the time of his death on January 5, 1913, their father owned 1,120 acres of land, all of which belonged to the community which existed between their father and their mother; that in the month of June, 1913, their mother, acting as their tutrix, attempted to partition a portion of the real estate by selling their interests in 160 acres

of land to Wade K. Pryor, in 200 acres of land to Blanche Pryor, now Mrs. Desha, and in 140 acres of land to Miss Georgia Pryor.

They alleged that, although these sales were made upon the advice and recommendation of a family meeting approved by the court, the sales were nevertheless null and void, and that the entire interest in the lands thus attempted to be sold is now a part of the succession of their deceased father and should be partitioned along with the remaining 580 acres. In other words, the contention of these two defendants, as set up in their answer, is that these sales should be ignored and that all of the land owned by their father at the time of his death should be partitioned in this proceeding.

There was judgment ordering a partition by licitation of the 580 acres of land, as prayed for by plaintiffs. From this judgment defendants appealed.

Before discussing the question as to whether the partition of this land should be made by licitation or in kind, we dispose first of the contention made by James T. Pryor and Mrs. Debet Pryor Hempel that the entire 1,120 acres of land owned by J. S. Pryor at the time of his death should not be considered as belonging to his succession and partitioned in this proceeding.

The record discloses that, at the time J. S. Pryor died on January 5, 1913, he owned 1,120 acres of land, 40 acres of which were purchased by him before his marriage. The remaining land, 1,080 acres, was acquired by him after his marriage and therefore belonged to the community. On February 13, 1913, the widow, Mrs. Carrie Wade Pryor, petitioned the court to be appointed administratrix of the succession of her deceased husband, alleging that the succession owed debts amounting to "some two thousand dollars". An inventory of the succession property was made, and an abstract thereof was filed according to law. For some reason not explained, she did not qualify as administratrix.

Thereafter, on March 25, 1913, Mrs. Pryor petitioned the court to be appointed and confirmed as natural tutrix of her two minor children, James T., aged 15, and Debet, aged 13, and alleged that one of her other children, Wade K. Pryor, was then 20 years of age but had been emancipated. An inventory and appraisement were made, and an abstract thereof filed according to law, and on June 27, 1913, the clerk of the district court signed an order confirming Mrs. Pryor as natural tutrix and appointing J. M. Wade under-tutor. The tutrix and the under-tutor qualified by taking the oath required by law.

On June 27, 1913, the tutrix presented a petition to the district court, alleging that she had been appointed and confirmed as natural tutrix of her two minor children, James T. and Debet Pryor, and that she was then in possession of, and administering, all the property belonging to the community which had existed between her and her deceased husband, Jesse S. Pryor. She further averred that the community owed debts to the amount of more than $2,000, and that the five children, issue of her marriage to Jesse S. Pryor, owned together

an undivided ½ interest in all of the property, and that she as widow in community owned the other ½. She alleged "that in order to pay the debts due by the community, as well as to effect a partition of some of the land it is necessary to sell same, and because of the delay and the greater cost for a judicial or public sale it is and will be more advantageous to petitioner and to the minors to sell the five lots of land herein below named at private sale".

Lot No. 1, as set forth in her petition, contained 200 acres; Lot No. 2, 240 acres; Lot No. 3, 80 acres; Lot No. 4, 160 acres, and Lot No. 5, 140 acres.

She prayed that a family meeting be ordered and held before the clerk of court, to advise and recommend "whether it be to the best interest of the said minors to sell the five lots of land respectively, herein above described". The clerk of court ordered that a family meeting be convened to advise and recommend as to the best interest of the minors. The family meeting was held as ordered. It fixed a value on each of the lots of land, and advised and recommended that it was to the best interest of the minors that the lots be sold at private sale and at not less than the appraisement. The recommendations of the family meeting were approved and homologated by the clerk of the district court on June 27, 1913. As to the powers and duties of clerks of the district courts in matters of this kind, see Section 3, Act 43 of 1882; Lemoine v. Ducote, 45 La.Ann. 857, 12 So. 939; Holliday v. Hammond State Bank, 118 La. 1000, 43 So. 656; Cole v. Richmond, 156 La. 262, 100 So. 419.

On the same day, June 27, 1913, Mrs. Carrie Wade Pryor, on her own behalf and as tutrix for the two minor children, joined by Misses Blanche and Georgia Pryor, two of the major heirs, sold to Wade K. Pryor, the other major heir, Lot No. 4, described in the application for the family meeting as containing 160 acres. The deed recites that Mrs. Carrie Wade Pryor, for herself, sells an undivided ½ interest in the property, and that each of the other vendors—the two minors, represented by the tutrix, and the two majors, Georgia and Blanche Pryor—sells a ⅕ of ½ (or 1/10) interest therein. Wade K. Pryor, the vendee, being one of the five children of Jesse S. Pryor, owned an undivided 1/10 interest in the property, and, having acquired 4/10 interest from the other four children and 5/10 interest from his mother, became the owner of the entire interest in this 160-acre tract of land.

The deed recites that the sale is made for and in consideration of the sum and price of $800—$200 cash, receipt of which is acknowledged, and the purchaser's one promissory note for $600, made payable to vendors or bearer. In order to secure the payment of the $600 note, the vendors retained, and the vendee granted, a vendor's lien and privilege on the property sold.

On the same day, Mrs. Carrie Wade Pryor, "for herself, and as Natural Tutrix for the minor heirs of said Jesse S. Pryor", joined by Wade K. Pryor and Miss Georgia Pryor, two of the major heirs of Jesse S. Pryor, sold to Miss Blanche Pryor, the

other major heir, the 200 acres of land described as Lot No. 1. This deed, like the one to Wade K. Pryor, recites that Mrs. Pryor sells, for herself, an undivided ½ interest in the property, and that each of the other vendors, the two minors being represented by their mother as tutrix, sells an undivided ⅕ of ½ (or ⅒) interest in the property; so that Miss Blanche Pryor, being one of the five children and owning an undivided ⅒ interest in the property, then became the owner of the entire interest in the 200 acres.

The deed recites that this sale is made for and in consideration of the price and sum of $1,112.50—$520 cash, the receipt of which is acknowledged, and one promissory note of the vendee for $592.50, the note being secured by vendor's lien and special mortgage on the property sold.

On the same day, Mrs. Pryor, for herself, and as tutrix of her two minor children, joined by Wade K. Pryor and Miss Blanche Pryor, both unmarried, sold to Miss Georgia Pryor, the other major heir, the land described as Lot No. 5, containing 140 acres. This deed contains practically the same recitals as the two mentioned above. According to the deed, the consideration for the sale was $466.66—$159 being paid in cash, and the balance of the purchase price being represented by one promissory note for $307.67, secured by vendor's lien and special mortgage on the property sold. Miss Georgia Pryor then became the owner of the entire interest in the 140 acres.

Each of the deeds recites that the interest in the property owned by the minors was sold on recommendation of a family meeting duly approved and homologated. The record shows that each of these deeds was duly recorded on the same day in both the conveyance and the mortgage records of the parish. After these sales there remained the 580-acre tract involved in this partition proceeding. The deeds do not recite that the minors' interest in the property was sold in order to effect a division or partition. Each deed on its face evidences an outright sale for a stipulated money consideration. They remained on the records unattacked and unquestioned, so far as the record discloses, for approximately 28 years, or until this suit was filed in 1941. These are the sales which are collaterally attacked in this proceeding.

James T. Pryor was 15 years of age and Debet Pryor was 13 when the sales were made. Therefore, 22 years elapsed between the date on which James T. Pryor reached his majority in 1919, and 20 years elapsed between the date on which Debet Pryor reached her majority in 1921, and the date of the filing of this suit in 1941.

Even if it be conceded that these sales were voidable, they were not absolutely void. We express no opinion as to whether these sales were valid or invalid, or whether they may now be attacked by direct action by James T. Pryor and Debet Pryor Hempel. It is certain, however, that they cannot be attacked collaterally in a proceeding of this kind.

In the case of Gandy v. Caldwell, 169 La. 870, 126 So. 221, 222, this court said:

"It has been repeatedly held by this court that the appointment of a tutor cannot be

attacked collaterally, and that a transfer of real estate that is voidable, not absolutely void, cannot be set aside in a petitory action; the only remedy being by a direct action of nullity against the parties to the transaction." Citing Robinson v. Scharfenstein & Son, 148 La. 364, 86 So. 915; Richardson v. McDonald, 139 La. 651, 71 So. 934; Vinton Oil & Sulphur Co. v. Gray, 135 La. 1049, 1059, 66 So. 357. See also Jackson et al. v. United Gas Public Service Co. et al., 196 La. 1, 198 So. 633.

There is therefore no merit in defendants' contention that all of the 1120 acres of land owned by Jesse S. Pryor at the time of his death should be included and partitioned in this proceeding.

We think the judgment ordering that the 580 acres of land be sold for cash in order to effect a partition is correct. The testimony as a whole shows conclusively, we think, that a division of the property in kind cannot be made according to the rules and regulations laid down in the Revised Civil Code.

Since each of the five children of Jesse S. Pryor owns an undivided 1⁄10 interest and Mrs. Carrie Wade Pryor owns an undivided 1⁄2 or 5⁄10, interest in the 580-acre tract to be partitioned, in order to partition it in kind 10 lots would have to be formed, one to be drawn by each of the children and five to be drawn by Mrs. Pryor. Raceland Bank & Trust Co. v. Toups, 173 La. 742, 138 So. 652, and the five cases cited therein at the top of page 751 of the Louisiana Reports (page 655 of the Southern Reporter).

Partition in kind is favored by our law. Rayner v. Rayner et al., 171 La. 1050, 132 So. 784; Kaffie v. Wilson, 130 La. 350, 57 So. 1001; Hoss v. Hardeman et al., 156 La. 371, 100 So. 532; Raceland Bank & Trust Co. v. Toups, supra.

On proof that property cannot be conveniently divided in kind, the judge must order, at the instance of any one of the heirs, that it be sold at public auction in order to effect a partition. R.C.C. Article 1339.

The question, then, is whether this property can be conveniently divided in kind.

"It is said that a thing can not be conveniently divided, when a diminution of its value, or loss or inconvenience of one of the owners, would be the consequence of dividing it." R.C.C. Article 1340.

"In the formation and composition of the lots, care must be taken to avoid as much as possible the cantling of tenements, and not to separate what is necessary for the same cultivation. And there ought to be included, if possible, in each lot, the same quantity of movables, immovables, rights and credits of the same nature and value." R.C.C. Article 1365.

When property is partitioned in kind, if it is owned in common by several persons in equal shares, the division must be so made that each co-owner receives a share equal in value to the share of each of the other co-owners. When the property to be partitioned consists of one tract of land, the lots need not necessarily be of equal area or value. If the lots are of unequal value, such inequality is compensated by

means of a return of money which the co-heir having a lot of more value than the others pays to his co-heirs. R.C.C. Article 1366.

■ However, in the formation and composition of the lots, there ought to be included, if possible, in each lot the same quantity of immovables of the same nature and value. R.C.C. Article 1365. Whether the land can be so divided, and whether it can be conveniently partitioned in kind in accordance with the rules and regulations prescribed by law, depends on the nature and character of the land included in the tract to be divided; the nature and character of the improvements thereon, if any; the acreage in cultivation, if any, and the adaptability of the land for farming purposes; the timber thereon, if any; whether the land is uniform in character throughout the tract, etc. All this must be taken into consideration by the experts who form the lots. The question of convenience, the accessibility of each of the lots to highways, such as roads and streams, should also be considered. The tract should be so divided as to give to each co-proprietor a smaller tract with at least a share of the open land, the woodland, the buildings, etc. The lots when formed, if not of equal value, should be approximately equal in value.

■ Of course, property cannot be divided in kind if the consequence of such division would be a diminution of the value of the entire property. R.C.C. Article 1340. In other words, the total value of the lots should not be less than the value of the tract as a whole.

■ The theory advanced by defendants' witnesses, who testified that they thought this property could be conveniently divided in kind, was that, since small farms in the vicinity of this tract, especially those located on public highways, can readily be sold to colored farmers at good prices, it would be advantageous to the co-owners to divide the 580-acre tract into 10 lots. But they could not explain just how 10 small farms could be carved out of this particular tract, each attractive to such prospective purchasers.

There was no disagreement among the witnesses as to the nature and character of the land involved. The land is in a hilly section. The witnesses seemed to agree that it is about equally divided "between hollows and hills." It is what is known as "broken land". Portions of it are high and rocky, the top soil having been eroded or washed away. Portions of it are what the witnesses referred to as "sandy land". According to the witnesses, some of it is poor land and some good bottom land. Some of the witnesses said that two small branches, or creeks, run through the land. One of them said there was only one such stream. All of them agreed that the land adjacent to these small streams is low and flat. There is a considerable quantity of growing timber on the land, fairly well distributed over the entire tract except on those portions which are in cultivation. Only two witnesses testified as to the acreage in cultivation. One of them said there were about 25 or 30 acres in cultivation, and the other said there were possibly 40 or 50 acres. So, even if we take the highest

estimate, less than 10 per cent of the entire tract is in cultivation. It is not shown that all of the land in cultivation is in one tract, or on what portion of the tract the cultivable land is situated. Some of the land is in pasture. One of the main public highways of the parish runs through the tract in an easterly and westerly direction, severing the tract into two portions of approximately equal acreage. There are several tenant houses on the property, all north of the highway. The main family residence, or homestead, is not on this 580-acre tract, but on the 40-acre tract owned by Jesse S. Pryor before his marriage.

H. G. Greer, a witness called for the defendants, said that he was 69 years old, that he had lived in the vicinity of this land all his life, and that he knew its nature and character. He was asked on direct examination whether he thought the property "could be cut up and divided", and he said he thought it could; but his answer was in response to the following question: "Mr. Greer do you think from the nature of that property that it could be cut up and divided among the heirs by giving the heirs one half and Mrs. Carrie Pryor the widow one half?" It was not suggested to him at that time that, in case the property were divided in kind, 10 lots would have to be formed. In answer to a subsequent question, he said he thought the value of the property would be enhanced rather than diminished by cutting it up into lots. He said what he meant by its being more valuable when cut up into lots was that "you can sell a small tract of land for a good deal more money than you can a big tract

of land, you can find more buyers for it". He said that there were some houses on the tract, and he was asked: "Would there be the same conveniences situated upon each one of these tracts?" His answer was: "Couldn't possibly be." He said he had not thought much about how many houses there were on the property, and that he thought that, if it were divided among the heirs, some of them would be without a house.

Miss Georgia Pryor, one of the defendants, testified that she thought the property could be conveniently divided in kind, but her testimony shows that she was speaking of a division of the 1120-acre tract of land owned by Jesse S. Pryor at the time of his death. She spoke of "the different farms about on this 1,120 acres of land". She was asked whether, taking into consideration the nature of the land and its situation, she thought it could be cut up into lots so as to give Mrs. Carrie Wade Pryor, the mother, her share and each heir a share. She said: "We will take there, the 40 acres of land on the 1120 that is considered the sorriest 40 is right in front of the house site where we live, right back of that is another forty of woodland that joins where as if someone took the 80 and take the sorry forty with the timber, then the 80 would be equal to some better eighty on further on over."

James T. Pryor, one of the defendants, testified that he was familiar with the property, and that some of it was in cultivation. He said: "The whole 1120 acres, half of it is in cultivation." He said he saw no reason why the property could not be divided so that the heirs would receive almost "an

equal portion in value of the lots". He was then speaking of the 1,120-acre tract. He was asked how much of the 580-acre tract was in cultivation, and said he thought 40 or 50 acres. He was not asked whether he thought the 580-acre tract could be divided in kind. He, like Miss Georgia Pryor, seemed to have in mind a division of the 1,120-acre tract instead of the 580 acres.

Since, as stated by Mr. James Pryor, ½ of the larger tract of 1,120 acres, or approximately 550 acres, is now in cultivation, it is possible that this larger tract could be conveniently divided into 10 small, attractive farms, each containing something like 50 acres in cultivation and a share of the timbered land. But the same cannot be said of the 580-acre tract, of which only 40 or 50 acres, at most, are in cultivation.

James A. Lupo, a surveyor, was called by defendants. He identified a plat of the land. He said he was not familiar with the character of the land, and was asked by counsel for defendants: "Mr. Lupo take that plat again please I will ask you if from the nature of the descriptions in that plat if it could be cut up into lots, equal lots?" His reply was: "Any land can be divided equally into tracts." He said it could be divided into lots regardless of value. He was asked: "In other words that could be readily partitioned in kind?" His answer was: "I don't know about in kind but in lots." He was asked on cross-examination by counsel for plaintiffs: "Your answer is

without regard to value or convenience?" And he said: "That is right."

Mrs. Carrie Wade Pryor, the owner of an undivided ½ interest in this tract of land, would necessarily be greatly inconvenienced by a division of the tract in kind. She would be entitled to draw five of the 10 lots, which might not be contiguous. She is now 74 years old and without money. She testified that the reason she wanted the property divided was that she needed a home of her own, which she expected to provide for herself if the property was sold. The testimony all shows that there is no house on any part of the land suitable for a dwelling for her; so that, if the property is divided in kind, she would be the owner of five of the lots but would have no funds with which to build. She would still be without a home, which she says she needs because she cannot live in peace in the old Pryor residence, or homestead, with her son and his wife who live there. Article 1340 of the Revised Civil Code provides that a thing cannot be conveniently divided in kind "when a diminution of its value, *or loss or inconvenience* of one of the owners, would be the consequence of dividing it". (Italics are the writer's.)

The testimony as a whole abundantly supports the judgment of the trial court that this property should be partitioned by licitation.

For the reasons assigned, the judgment appealed from ordering the property partitioned by licitation is affirmed; the costs of this appeal to be paid by appellants.