No. 2080.—HEIRS OF WENDERLIN DOLL *v.* JAMES KATHMAN.

A purchaser of property at judicial sale acquires an indefeasible title by complying with his bid. In case of an active violation of the contract of purchase by the purchaser, or in case of open refusal to comply with his bid after demand, default is not necessary as a condition precedent to the action for the rescission of the sale and the recovery of damages. But if no demand has been made on the purchaser to comply with the terms of the sale, then, and in that case a putting in default would seem to be a condition precedent to recovery.

As a condition precedent to the action for the rescision of contracts and the recovery of damages for the nonperformance of engagements, the putting of the party in *mora* is strictly required, and the default must be made certain.

APPEAL from the Seventh District Court, parish of Orleans. *Collens, J. O. Roselius* and *A. Philips,* for plaintiffs and appellants. *G. Schmidt* and *Fellows & Mills,* for defendant and appellee.

TALIAFERRO, J.   The plaintiffs sue to recover certain real estate in New Orleans, alleging the defendant is in the possession of it, and illegally withholds it from them. The defendant denies that the plaintiffs have any right to it, and sets up title to the property in himself, averring that he bought it at a probate sale of the succession of the plaintiffs' father, Wenderlin Doll. The judgment of the court *a qua* was in favor of the defendant. The suit was dismissed, reserving to the plaintiffs any right they may have to enforce the payment of the price at which the defendant bought the property. Plaintiffs have appealed.

Prior to the institution of this suit and as far back as 1861, the defendant, Kathman, brought a suit in the Second District Court of New Orleans against the administrator and heirs of Wenderlin Doll, who died in February, 1861, to obtain title to an undivided half part of various lots of ground and buildings thereon, the lot and buildings at the corner of Bienville and Marais streets, forming the object of the

present controversy, alleging that at the time of the purchase by Doll
of the property from Massey, he in fact acquired an interest in the pur-
chase although the title was taken in Doll's name, and that by an
agreement between himself and Doll the latter was to make Kathman
a title upon the payment by him of $7500. He averred that by this
agreement all the property which they owned in the Second District
of New Orleans was to remain under Kathman's control and adminis-
tration. That he was charged no interest on the sum he agreed to
pay Doll, and that he was to be credited with one-half the net reve-
nues of the property as they were collected.

It seems Kathman had the property in dispute, as well as all the
other property which he alleged was jointly owned by himself and
Doll, in the Second District, from the early part of the year 1859,
Doll having purchased from Massey in March of that year. This suit
in the Second District Court was protracted for a great length of time.
The administrator of Doll's estate filed an exception to the suit in
May, 1864, and in January, 1866, the heirs of Doll answered, denying
any right in Kathman to claim what he demanded, and set up a recon-
ventional demand against him for large sums alleged to have been
collected by him in rents and revenues of the property in his posses-
sion, and which were unaccounted for. In May, 1866, this suit was
dismissed by order of the court. In November following, upon a rule
to have the case reinstated on the docket, the rule on exception by the
offering counsel was discharged. Here, this branch of the litigation
between the parties seems to have ended

In January, 1862, the property of Wenderlin Doll's succession was
sold at public sale, and Kathman bought the property for which he is
sued in the present action. The price was $8000, one-third cash, th-
remainder in one and two years, with mortgage retained, and interest
at eight per cent. from date.

The defendant, it is charged, has never paid any part of the price o:
the property, and it is not shown that he has. It is argued on the part
of the plaintiffs, that never having paid for the property, he is not the
owner of it. It is not shown, however, that the heirs or any person
authorized have ever made any demand of payment, or that the de-
fendant has been put in default, a condition precedent to the right of
the plaintiffs to recover. It was on this ground that the judgment of
the district court was rendered, and the main question in this case is,
whether from the facts shown, a formal putting in default was neces-
sary. The rule we take to be well settled that where there are nega-
tive or passive breaches of contracts a default is necessary; but they
are not necessary where positive breaches take place. This court in
the case of Washburne v. Green, 13 An. 333, an authority cited on be-
half of the plaintiffs, laid down the doctrine that "although article

3586 of the Civil Code declares that the adjudication completes the sale, yet, it was never the intention of the lawgiver to say this conse- quence should follow, and the sale should be complete where the pur- chaser had *refused* to comply with the terms of the sale on demand, and had been decreed by the judgment of a competent court to be in default." And in the same case the court said further: "The pur- chaser at a judicial sale acquires such a vested right to the property by the adjudication that it can not be divested and taken from him unless he *refuses* to comply with the terms of the sale. It is in his power by a compliance with the terms of the sale to become the owner by indefeasible title. It can not be taken from him. In this sense the adjudication is the completion of the sale. But if the purchaser refuses to comply with the terms of the sale he is considered as never having been owner, saving to the vendor his right to compel a specific performance of the contract." Many decisions are to the same effect. There are among them 14 La. 588, 590; 5 L. R. 472; 15 La. 398; 2 An. 361; 14 An. 449.

In the case at bar, as we have before remarked, we are not shown that the defendant has ever been applied to amicably or by judicial demand to comply with the terms of the adjudication. How then can it be said that he ever refused to comply? For the plaintiffs it is re- sponded that the law is satisfied by any evidence which indicates an intention not to comply with the adjudication. It is argued that Kath- man was guilty of an active breach of the contract by continuing to prosecute a claim as owner of the property under an alleged antece- dent and conflicting title until long after the institution of the present suit. Under the circumstances a formal putting in default may possi- bly have been a vain and useless thing, not required to be done. But, after all, would it not be mere conjecture to say that the defendant would not have complied if a proper demand had been made? Do the facts relied upon as evidencing an active positive breach of the con- tract, render it legally certain that a demand would inevitably have been followed by a refusal? We must keep in mind that the heirs of Doll permitted the defendant to remain in uninterrupted possession of the property from the death of their ancestor in 1861, until the insti- tution of this suit in July, 1866, after the judgment had been rendered against him in his suit against the heirs for one-half of all the prop- erty. The administrator too received from him revenues of the prop- erty. After the defendant's failure in that suit, he may have thought it best to pay for the property he bought at the probate sale. At all events, during this long period, no proper demand was made, and con- sequently no direct absolute and positive refusal was made. We are referred to the cases of Rowley *v.* Kemp, 2 An. 360, and Pendarris *v.* Ware, 14 An. 449, as more especially in support of the position as-

sumed on the part of the plaintiffs; but we do not consider them as bearing on the case at bar. In Rowley *v.* Kemp, it is said that "Rowley, as agent of Lansing, bid for the property, and. it was adjudicated to him, and he not complying with the terms of the sale, the sheriff readvertised the property for sale, treating the acts of Rowley, attorney in fact, as nullities, as he was bound to do; for his conduct throughout shows that his sole object was to embarrass the proceedings of the sheriff, and defeat the process of the court." But we learn further, that Rowley *refused* to comply with his bid, and the reasons assigned for his refusal were not satisfactory to the court. In the other case, Pendarris *v.* Ware, there was an active breach of the contract, because the widow tendered in payment of her bid, not money, which was required by the terms of sale, but claims against the estate of her deceased husband, and positively declared she would give nothing else.

As a condition precedent to the rescission of contracts and to the recovery of damages for the nonperformance of engagements, the putting the party *in mora* is strictly required; and the default must be made clearly to appear.

We think the plaintiffs in this case have not made out the alleged refusal of the defendant to comply with the terms of the sale with that precision and clearness which, in our opinion, the law requires.

The conclusion we have arrived at renders it unnecessary to pass upon the several bills of exceptions found in the record.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed with costs