The opinion of the court was delivered by
Fenner, J.
This is a petitory action wherein plaintiff claims the ownership and delivery of certain lands which, she alleges, are in the possession of the defendant as a mere trespasser.
The defendant denies plaintiff’s ownership and sets up title in himself.
A statement of the admitted or indisputable facts presented by the record subjects the case to the application of clear principles of law which leave little difficulty in its decision.
It is not denied that, in 1868, plaintiff, a married woman, separated in property from her husband, acquired the property in con *1086 troversy with other property by valid title and held the same as her paraphernal property.
On the 1st of January, 1879, she executed an act of sale, in authentic form, of the property thus acquired, to her brother-in-law, Joseph S. Nunez, which purported to convey the property to him with full warranty and for a definite price, which, she declares in the act, was then and there paid to her, partly in cash and partly in notes. She was properly authorized and assisted by her husband, and the act was duly recorded. On June 28, 1888, Joseph S. Nunez executed an act of mortgage on a part of the property in favor of Manade & Pedaré to secure the payment of a note given for advances made and to be made during the year to J. S. Nunez, to enable him “ to cultivate his sugar plantation under the superintendence and management of his brother, Demosthene Nunez,” plaintiff’s husband. The plaintiff, authorized by her husband, was a party to the mortgage and signed the note as solidary security.
In 1886, Manade & Pedaré, who were aliens, brought suit, via ordinaria, in the United States Circuit Court on this note against both J. S. Nunez .and the plaintiff; both were personally cited, and, making no appearance, judgment by default was duly entered and confirmed whereby both were condemned in solido, and the mortgage was recognized and ordered to be enforced. On this judgment a writ of fi. fa. was issued in January, 1887, under which the mortgaged property was seized; notice of seizure was served on plaintiff and her husband, as well as on J. S. Nunez personally; the property was duly advertised, appraised and sold, and was adjudicated to M. Manade, one of the judgment creditors. Shortly thereafter, on July 6, 1887, Manade sold the property thus acquired to Felix Broussard, the present defendant, who received and has held possession, without objection or interference by plaintiff, up to the date of the institution of this suit.
On the same day, Joseph S. Nunez transferred to defendant the remainder of the property sued for in this action, by an act of exchange, by which defendant, in consideration for the same, transferred to Nunez a valuable plantation belonging to him. The plaintiff and her husband were both cognizant of this exchange, approved and encouraged it, and plaintiff advised defendant to make it. After the exchange plaintiff removed from the property to the plantation received from defendant, and lived upon the same until it was seized and sold in satisfaction of debts of Jos. S. Nunez.
*1087 Such are the titles propounded by defendant in opposition to the plaintiff’s demand.
The present action is doubtless prompted by the judgments rendered by this court in the eases of Broussard vs. Sheriff et al., 44 An. 881, and 43 An. 939.
Those were actions brought by the present plaintiff to restrain the sale by ¡creditors of J. S. Nunez of certain property different from that herein involved, but covered by the same sale of January 1, 1879, from plaintiff to said Nunez hereinabove referred to, and to have said sale pronounced a nullity on the ground that the sale was simulated and fraudulent, and executed under the influence of her husband, merely as a pignorative contract intended as security for his debt, in violation of a prohibitory law, and, therefore, null and void. Our judgment annulled that sale and perpetuated the injunction.
But in those cases we were dealing with simple judgment creditors of Jos. S. Nunez, who were seeking to subject to the payment of their debts property which, though apparently belonging to their debtor, did not really belong to him, but to another. They had paid no value and parted with no consideration on the faith of the apparent title. In this case we are dealing with the rights of a purchaser for value and in good faith, who acquired on the strength of the apparent title, valid on its face and with the full knowledge, approval and participation of the very party who now sets up its nullity.
In the very case above referred to (44 An. 833) we said: “It is quite true as a’matter of equity, and this court has repeatedly maintained the principle, that, in case a party in possession under a recorded title executes a special mortgage thereon in favor of a third and innocent mortgagee, who advances money upon it, he nor his vendor can successfully attack and defeat it, on making proof of secret equities and latent ambiguities in the title.”
It is true, it appears that J. S. Nunez did not take physical possession under the conveyance from plaintiff to him, but that fact loses all significance in view of the facts in this case. Plaintiff was herself a party to the act of mortgage from Nunez to Manade & Pedaré and a joint obligor on the note secured. She recited therein that the plantation belonged to Nunez and was only “ under the administration and management of her husband.” Moreover, she was *1088 a party to the suit enforcing the judgment, and, if she had any defence thereto, she should have urged it, and, not having done so, is bound by the judgment and by the execution and sale thereunder, of which she had full notice and which she recognized by promptly and peaceably delivering possession to the adjudicatee and his vendee. The verity and full consideration of the mortgage and the perfect good faith of Manade & Pedaré, the binding effect of their judgment obtained contradictorily with plaintiff, and the validity of Manade’s title as adjudicatee at a sale of which plaintiff had the fullest notice, do not and can not admit of question, and defendant’s acquisition from Manade is entitled to like protection.
The same principles apply to the exchange between Nunez and defendant. Plaintiff actively participated in promoting and bringing about said exchange, and she also participated in its execution by delivering possession of the property now claimed to defendant and by actually removing to and taking possession of the property received from defendant.
A feeble attempt was made to impugn the good faith of defendant in this transaction and to bring home to him notice of the unreality of Nunez’ title. This attempt is a failure. It rests exclusively on the testimony of Nunez, which is contradicted by defendant, and was not believed by the judge a quo. Whatever suspicion might have been aroused by the fact of plaintiff’s continued possession of the property was entirely removed by plaintiff’s own assurances as to Nunez’ right to dispose of the property and by her voluntary participation in the execution of the exchange. We consider that defendant has fully established his position as a purchaser in good faith and for value on the faith of apparently valid recorded titles.
It is settled in this court by a jurisprudence too inveterate to admit of question that “ whatever the secret equities between a vendor and vendee, the former can not claim them against a subsequent purchaser in good faith. Having placed on the public records the title on the faith of which such purchaser acquired, the vendor must bear the consequences of having presented the vendee’s rights in a false aspect.”
Hennen’s Dig. Sale V (a), No. 1, and numerous authorities there quoted.
Plaintiff had full power and authority to make the sale to Nunez, *1089 and, upon its face, it waa as valid a title as if made by a man or femme sole. The doctrine above quoted has been applied to a married woman in such case, and it was held that “ threats and undue influence of the husband to induce his wife to sign an act of sale of her paraphernal property to B can not affect the rights of 0, a bona fide purchaser from B.” Blanchard vs. Castile, 19 La. 362.
The equity of the doctrine is well expounded by Ohief Justice Marshall in the following language:
“ If a suit be brought to set aside a conveyance obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside as between the parties; but the rights of third persons who are purchasers without notice, for a valuable consideration, can not be disregarded. Titles, which according to every legal test are perfect, are acquired with that confidence which is inspired by the opinion that the purchaser is safe. If there be any concealed defect arising from the conduct of those who had held the property long before he acquired it, of which he had no notice, that concealed defect cannot be set up against him. He has paid his money for a title good at law; he is innocent, whatever may be the guilt of others, and equity will not subject him to the penalties attached to that guilt. All titles would be insecure, and the intercourse between man and man would be very seriously obstructed, if this principle be overturned.” Fletcher vs. Peck, 6 Cranch. 133.
Married women can claim no exemption from the application of these principles when acting within the powers conferred upon them by law. The principle heretofore announced by this court fully applies : ■>
“ While the law and the jurisprudence have at all times favored married women in the assertion and vindication of their rights, they have never intended and do not contemplate to protect them in the perpetration of fraudulent practices, for the accomplishment of villainous objects, by which to enrich themselves gratuitously at the expense of their unguarded and trusting neighbor, on whom equity keeps a watchful eye.” Henry vs. Gauthreaux, 32 An. 1108.
There are other principles of law equally antagonistic to plaintiff’s claims in this case, but we deem the above conclusive and sufficient.
Judgment affirmed.