(100 South. 419)

No. 24225.

### COLE et al. v. RICHMOND et al.

(March 10, 1924. Rehearing Denied by Division A May 12, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Guardian and ward** ⊜➔100—**Tutorship; that no place of sale was fixed for tutor's sale held not to invalidate it.**

   That a sale by a tutor was had in pursuance of recommendation of a family meeting which fixed no place of sale, no place being fixed by court, did not render the sale invalid, although it took place outside of the parish.

2. **Guardian and ward** ⊜➔104—**Tutorship; failure to fix place of tutor's sale held cured by statute of prescriptions.**

   Failure of the court to designate place of sale in order authorizing tutor to sell property of minors as a defect was cured by five-year prescription under Civ. Code, art. 3543.

3. **Guardian and ward** ⊜➔97—**Tutorship; sale of property in globo instead of in parcels held not to invalidate it.**

   That at a tutor's sale the property was offered in globo instead of in parcels as appraised and as ordered by family meeting and order of sale does not invalidate it, where the property brought more than the appraised value.

4. **Guardian and ward** ⊜➔100—**Tutorship; that judgment homologating proceedings of family meeting and ordering sale was signed in chambers held not to invalidate sale.**

   Public sale by tutor *held* not invalid as made without order because judgment of court homologating proceedings of family meeting and ordering sale was signed in chambers; Code of Practice, art. 543, as amended by Act

No. 267 of 1916, referring exclusively to final judgments, in view of articles 539 and 540.

**5. Guardian and ward ☞13(7)—Tutorship; what orders may be signed in chambers stated.**

Orders convoking family meetings, appointing tutors, homologating proceedings of family meetings, etc., may be signed in chambers, as they are not definitive judgments.

**6. Guardian and ward ☞99—Tutorship; sale by tutor to wards' mother and stepfather held valid.**

A tutor who was the grandfather of the minors could sell their property to the minors' mother and stepfather, they not holding any position of trust affecting property at date of purchase.

**7. Clerks of courts ☞66—Clerk held authorized to appoint members of family meeting.**

The duties imposed on the clerk of the district court by Act 43 of 1882, § 3, to order family meetings are merely ministerial and mandatory, and do not involve exercise of judicial functions, and hence that the members of a family meeting were appointed by the clerk and not by the judge, as required by Civ. Code, art. 284, did not invalidate its action, notwithstanding Code Prac. art. 543, as amended by Act No. 267 of 1916.

**8. Clerks of court ☞65—Constitutional law ☞56—Statute authorizing clerks to order family meetings and homologate their proceedings held valid.**

Act 43 of 1882, authorizing clerks of district courts to order family meetings and to homologate their proceedings when not opposed, held not in violation of Const. 1879, arts. 92 or 122, nor Const. 1898, art. 123.

**9. Guardian and ward ☞100—Tutorship; erroneously dating deed prior to sale held not to invalidate sale.**

That deed to purchaser at tutor's sale was dated the day before the sale through error held not to invalidate the sale.

**10. Guardian and ward ☞108—Tutorship; innocent purchasers from adjudicatee under regular proceedings not affected by irregularities in decree subsequently ascertained.**

Where tutor's sales proceedings are regular, innocent purchasers on the faith of a deed to the adjudicatee valid on its face and duly recorded cannot be affected by irregularities in the decree subsequently ascertained, as they need not look beyond the decree.

**11. Courts ☞117—Truth of record as to matters within jurisdiction cannot be disputed.**

The truth of the record concerning matters within the jurisdiction of the courts cannot be disputed. .

**12. Vendor and purchaser ☞231(1)—Sales; purchasers on faith of public records not bound by knowledge, except that disclosed therein.**

Innocent third persons purchasing real estate on faith of public records cannot be bound by any knowledge, except such as is disclosed by such records.

**13. Vendor and purchaser ☞239(9)—Sales; bona fide purchaser for value acting on recorded title not affected by fraud, want of consideration, or secret equities.**

Neither fraud nor want of consideration nor secret equities between the parties who have placed on public record a valid title on its face can be urged against bona fide purchaser for value who has acted on the faith of such recorded title.

**14. Guardian and ward ☞108—Tutorship; what irregularities cannot affect purchasers from adjudicatee at tutor's sale stated.**

Where adjudicatee at tutor's sale under decree of competent jurisdiction sold the property to third persons, they could not be affected, because no price was paid to the adjudicatee; that the adjudication and sale was not made by the tutor but by a third person; that adjudicatee was not present, and her husband without authority bid in the property; that tutor was without authority to sign procès verbal of adjudication before price was paid; and that the property was bid in to stifle competitive bidding.

**15. Guardian and ward ☞100—Tutorship; adjudicatee's failure to pay price at tutor's sale held not to make sale void ab initio of adjudication.**

That no price is paid at a tutor's sale, where the family meeting and order of court direct the property to be sold for cash, does not make it null and void ab initio, so that no title passes to adjudicatee, in the sense that there is no adjudication at all, in view of C. P. arts. 690 and 695, and R. C. C. art. 2608, notwithstanding C. P. art. 689.

**16. Guardian and ward ☞101—Tutorship; adjudicatee's failure to pay purchase price does not affect rights, where no demand therefor made.**

Adjudicatee at tutor's sale held not divested of her rights because she has not paid the pur-

chase price, where no demand therefor had been made, nor any suit instituted.

Appeal from Fifteenth Judicial District Court, Parish of Allen; Jerry Cline, Judge.

Suit by Huldah S. Cole and others against Mary Louisa Richmond and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

White, Holloman & White, of Alexandria, for appellants.

Williams & Reed, of Oakdale, for appellees.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. The plaintiffs, Huldah S., Samuel R. and Eva S. Cole, are the issue of the marriage between John H. Cole, deceased, and of Mary Louisa Guillory.

At the date of the institution of this suit, October 15, 1919, Huldah S. Cole was 21 years of age, and Samuel R. and Eva S. Cole, emancipated minors, were respectively of the ages of 20 and 17 years.

John H. Cole died intestate in St. Landry parish in the year 1903, leaving an estate composed of separate property and of community property; the separate property consisting of certain lots in Oakdale, parish of Allen, formerly a part of Calcasieu parish. The portion of the parish of St. Landry in which John H. Cole resided at his death is now embraced within the limits of the parish of Evangeline. Plaintiffs are residents of that parish. After the death of her husband, Mrs. Mary Louisa Cole applied May 12, 1903, to the district court of St. Landry parish for confirmation as natural tutrix of her three minor children. She was duly confirmed as natural tutrix, and, upon the recommendation of a family meeting, Narcisse Guillory, the maternal grandfather of said minors, was appointed undertutor, and duly qualified.

Mrs. Mary Louisa Cole became divested of the tutorship by her second marriage to John B. Richmond in 1907, not having called a family meeting to be retained in the tutorship prior to contracting said marriage.

In the year 1913 Narcisse Guillory, the former undertutor of said minors, and their maternal grandfather, being the nearest male relation in the ascending line, represented by the law firm of Overton, Blackman & Dawkins, was appointed tutor of said minors, Mrs. Mary L. Richmond, mother of plaintiffs, signing with Narcisse Guillory, at the time, the affidavit verifying the facts set forth in the petition of Narcisse Guillory praying to be appointed tutor. Ed. McDaniel was appointed undertutor.

During the period intervening between the marriage of Mrs. Mary Louisa Cole to John B. Richmond in 1907, and the appointment of Narcisse Guillory as tutor, in 1913, to wit, on April 17, 1912, and on May 2, 1912, Mrs. Mary L. Richmond sold to Dr. S. M. Scott, as her property, certain lots in Oakdale, parish of Allen, belonging to her minor children and inherited by them as a part of the separate estate of their deceased father.

After duly qualifying as tutor, Narcisse Guillory obtained an order from the district court of the parish of Evangeline, for the sale of certain lots in Oakdale, Allen parish, the property of said minors, on the ground that funds were needed for their proper maintenance and education, alleging in the petition for sale that said lots were the only unproductive property owned by said minors, and that the property could then be disposed of at a more advantageous price than at any other time, because of the establishment of manufacturing industries in the town of Oakdale.

This sale was ordered after a family meeting, convoked for the purpose, had determined said sale to be necessary and of evident advantage to said minors, and after their recommendations had been duly ho-

mologated and approved by the judgment of the district court of the domicile of the tutor and of the minors.

The sale was made August 24, 1913, at public auction, and after due legal advertisement, at the front door of the courthouse of the town of Oakdale, parish of Allen, as shown in the procès verbal of sale returned by Narcisse Guillory, tutor of said minors, and by other testimony in the case.

The lots sold were adjudicated by Narcisse Guillory, "tutor of said minors" to "Mrs. Mary L. Richmond (born Guillory) wife of John B. Richmond, and by him authorized," "the last and highest bidder," for the sum of "$8,000 cash in hand," as recited in the procès verbal of sale of date August 24, 1913, and filed September 3, 1913.

The formal deed to Mrs. Mary L. Richmond, adjudicatee, referred to in the procès verbal of sale, is of date August 23, 1913, and, like the procès verbal, contains the recitals above mentioned, and the statement that the purchase price paid by Mrs. Richmond was "more than said appraisement of said property on file," a statement also contained in the procès verbal of said sale.

The formal deed is by authentic act, signed by Narcisse Guillory as tutor, and was duly recorded in the parish of Allen, August 23, 1913.

Mrs. Richmond, at the date of the filing of this suit, October 15, 1919, had disposed of all of the property adjudicated to her to third persons, except the following-described lots, the title to which stand in her name: "A strip off the south side of lot 3, block 5, east of Ninth street, fronting 12 feet on Ninth street by 160 feet deep between parallel lines; also the north half of lot 5 and the north half of lot 17, and a twenty-foot strip running from Fifth avenue across lots 13, 14, 15, 16 and 17, one-half of all in said block 5, east of Ninth street; also lot 17 and a strip 12 feet wide off this south side of lot 18, by the depth of said lot, in block 5 east of Eighth street."

A list of the sales made by Mrs. Richmond to the various third persons, defendants and interveners, in the suit, after the adjudication to her at public sale August 24, 1913, is found at pages 219 and 220 of the transcript in this case.

The plaintiffs have brought the present suit against these vendees of their mother, against her, and against John B. Richmond, their stepfather, alleged to be an intermeddler in their affairs, to have declared null and void ab initio the public sale made to their mother by their grandfather, Narcisse Guillory, as tutor, on August 24, 1913, and to recover the ownership and possession of the property from her vendees under said adjudication, as well as the property remaining in the possession of their mother by virtue of said adjudication, and also rents and revenues since the date of said public sale.

Plaintiffs have attacked the public sale made by their tutor to their mother, Mrs. Richmond, upon numerous grounds, which they have alleged under subheads, from (A) to (M) in article XIX of their petition, and they assert that all of the vendees of their mother had legal notice of the radical nullities in said purported public sale, which appeared from the proceedings themselves, and particularly of the defects (C), (D), (E), (F), (H), (J), (K), (L), and (M), set forth in paragraph XIX of the petition.

[1] We shall first consider the grounds of attack on said public sales in so far as they relate to the order of sale, beginning with (M), charging that "no place of sale was fixed and it could not therefore be lawfully made outside of Evangeline parish, the domicile of the parties and the parish of jurisdiction."

The family meeting did not fix the place of sale, but recommended "that there be a public sale, after due advertisement, and ac-

cording to law, of the following described property, belonging to said minors," describing said property "as situated in the town of Oakdale, parish of Allen, state of Louisiana."

The order of sale is identical in terms with the recommendations of the family meeting as to the description and location of this property.

As the property to be sold was situated "in the town of Oakdale, parish of Allen," the tutor proceeded "to the front door of the courthouse in the town of Oberlin, parish of Allen," and made the sale, as shown by his procès verbal returned in the case, and recorded the deed in the parish of Allen, where the property sold is located. The property had been advertised by the tutor in the Oberlin News for 30 days prior to sale.

In the case of Julia Pierce, 9 Mart. (O. S.) 461, the family meeting had recommended that it was most advantageous that a tract of land in the parish of Feliciana, belonging to the minor, should be sold in the parish of Orleans, where the tutor and the minor resided. The court of probates of the parish of Orleans decided that said land should be sold in the parish of Feliciana, notwithstanding the recommendation of the family meeting that it be sold in the parish of Orleans. The decision of the lower court was reversed by this court, and it was ordered that the register of wills of the parish of Orleans proceed to the sale of the land, according to the recommendation of the family meeting. It was said by the court in that case:

"By our law, the judge where the minor resides is alone invested with authority to order a sale of this description, but is silent where that sale shall take place. As it has left the subject unlegislated on, the best course we can adopt is to follow the advice of the family meeting, given on oath, that it is for the interest of the minor it should be sold in New Orleans."

The jurisdiction of the district court of Evangeline parish, where the tutor and minors resided, to order the sale of this property cannot be questioned. The place of sale, in the absence of any recommendation of the family meeting, of any particular place, and in default of any designation of place by the court in the order to sell, became a mere incident, and, whether such sale was made in the parish of the domicile of the minor, or in the parish in which the property is situated, it cannot be successfully argued that such sale is contrary to the order of the court or made without an order of the court. In fact, in the case of Julia Pierce, above cited, there seems to have been no question as to the right of a court of probate, ordinarily to order the land of a minor sold in the parish in which it is situated.

[2] "The question," says Porter, J., "to be decided in this case is whether the court of probates can order a tract of land, belonging to a minor, to be sold in any other parish but that in which it is situated." The place of sale fixed by the family meeting in the Julia Pierce Case was permitted to control, as the law is silent as to such place, notwithstanding the authority of the judge of the minor's domicile to order the sale. This decision clearly indicates that the place of sale is not jurisdictional, but is a mere incident to the sale, which may be regulated by a family meeting in the interest of the minors, in the absence of a positive law on the subject. If the failure, however, of the court of Evangeline parish to designate the place of sale in its order to sell can be assigned as a defect or informality in the sale, it is such as is cured by the prescription of five years under article 3543 of the Civil Code, pleaded by the defendants in this case, and this prescription runs against minors, as expressly declared in said article.

"If the sale was not made at the proper place, this is a mere irregularity, curable by

the prescription of five years, which defendant has pleaded." Landry et al. v. Laplos, 113 La. 701, 37 South. 607; Louaillier v. Castille, 14 La. Ann. 777; Allan v. Couret, 24 La. Ann. 24; Munholland v. Scott, 33 La. Ann. 1043; Oriol v. Moss, 38 La. Ann. 770; Pike v. Evans, 94 U. S. 6, 24 L. Ed. 40; Civil Code, art. 3543.

[3] (C) and (J): "Competitive bidding was prevented by offering said property in globo instead of in parcels as appraised. The sale in globo was a fatal variance from the order of the family meeting and the order of sale by the court, and amounted to a sale without any order whatever."

The Oakdale property was appraised at a total valuation of $3,545. Seven lots in block 5, east of Eighth street, were each separately appraised, aggregating a total of $545, and all of block 5, east of Ninth street, was appraised in globo at $3,000.

The lots were adjudicated as a whole to Mrs. Richmond for a price of $8,000, cash, or more than twice their appraised value, as shown by the procès verbal of the sale returned by the tutor, and also by the formal deed executed by the tutor to her, and duly recorded.

Being sold as a whole, they were purchased as far as third persons are concerned, for a cash consideration of $8,000, and "for more than their appraised value," as stated in the procès verbal of the sale and in the formal deed on record.

However, the adjudication of a minor's property for less than its appraised value is a relative nullity, and is prescribed against by the prescription of 5 years. Fraser v. Zylicz, 29 La. Ann. 537; Hughes v. Edson, 129 La. 871, 57 South. 154; R. C. C. art. 3543.

[4] (E): "The public sale amounted to a sale without an order, because the judgment of the court homologating the proceedings of the family meeting and ordering the sale was signed in chambers."

Article 543 of the Code of Practice, as amended by Act 267 of 1916, declaring that "all judgments must be rendered, read and signed * * * in open court," etc., refers exclusively to final judgments deciding all points in controversy between the parties. C. P. art. 539.

Article 540 of the Code of Practice declares that "courts give mandates or orders, which though they are not termed judgments, have nevertheless the same effect as judgments; such are mandates of arrest and of seizure."

[5] While such orders must be signed, there is no law of this state requiring that they shall be rendered and read and signed in open court. Orders convoking family meetings, appointing tutors, homologating the proceedings of family meetings, etc., may be signed in chambers, as they are not definitive judgments. Such has been the universal practice of the district judges in this state from the earliest times.

[6] (D): "Petitioners' mother and stepfather were incapacitated and prohibited by law and morals from purchasing or profiting in petitioners' property because of the fiduciary relationship, and the relationship of consanguinity and affinity existing between them and your petitioners."

Neither the mother nor the stepfather of plaintiffs held any position of trust affecting the property of said minors at the date of the purchase by Mrs. Richmond at the public sale. No law has been pointed out prohibiting either of them from purchasing at said sale; the question presented, therefore, as the morality of such purchase is more casuistical than judicial.

[7] (F): "The members of the family meeting were not appointed by the judge as the Civil Code of Louisiana requires."

Article 284 of the Civil Code provides that—

"The appointment of the members of the family meeting shall be made by the judge."

Act 43 of 1882, section 3, declares that clerks of district courts—

"shall have power * * * to order family meetings * * * and to homologate their proceedings, when not opposed."

[8] We have held that the duties imposed on the clerk by the provision of this act were merely ministerial and mandatory, and did not involve the exercise of judicial functions. Act 43 of 1882 is constitutional, and does not violate either article 92 or article 122 of the Constitution of 1879, or article 123 of the Constitution of 1898. Article 123 of the Constitution cited empowered the Legislature "to vest in clerks of court authority to grant such orders and to do such acts as may be deemed necessary for the furtherance of the administration of justice." Hence Act 43 of 1882 was clearly authorized by the organic law, and does not derogate from the powers of the judge, but simply provides that certain duties attached to the judicial office may be exercised by the clerks of the court. There is no conflict, therefore, between article 340 of the Civil Code and Act 43 of 1882 as to the authority of the judge to appoint the members of a family meeting. The same authority, however, may be exercised by a clerk of a district court, as it is made his duty by Act 43 of 1882, section 3, to order family meetings, which necessarily includes the duty of appointing the members of such meetings. Holliday v. Hammond State Bank, 118 La. 1000, 43 South. 656; Lemoine v. Ducote, 45 La. Ann. 857, 12 South. 939.

[9] (K): Because the deed was dated and filed for record on August 23, 1913, the day before the public sale, it is charged by plaintiffs that said property was actually adjudicated according to agreement in advance, since said deed recites the formalities of the public sale and the same consideration as the bid at the sale, which was made on August 24, 1913, as evidenced by the procès' verbal of sale of that date. As no such agreement appears upon the face of the deed, or otherwise, of record, we do not well see how third persons purchasing this property upon the faith of the public records can be affected by such an agreement, even had same existed in fact. The testimony in the record showing that the sale was actually made on August 24, 1913, and the procès verbal declaring that said sale was made on that date, it is quite clear that the date of the deed was a mere error.

[10, 11] We have dealt with these particular grounds of attack made upon the public sale, as they are matters, more or less, disclosed by the public records, and defendants are third persons. The district court of Evangeline parish was unquestionably vested with jurisdiction to order, the sale of the property of these minors for the purpose approved by the family meeting. The proceedings are regular, and defendants, as innocent third persons, who have purchased this property upon the faith of the deed to Mary L. Richmond, the adjudicatee at a public sale, held under the decree of a court of competent jurisdiction, said deed being valid upon its face and duly recorded, cannot be affected by any irregularities in the decree subsequently ascertained, nor are they bound to look beyond the decree recognizing its necessity. The truth of the record concerning matters within the jurisdiction of the court cannot be disputed. Irwin v. Flynn, 110 La. 832, 34 South. 794; Nesom's Heirs v. Weis et al., 34 La. Ann. 1010; Chaffe v. Minden Lumber Co., 118 La. 753, 43 South. 397; Bell v. Lafosse, 126 La. 528, 52 South. 687.

[12] The conveyance records are the only thing to which one dealing with real estate needs to look, under the repeated decisions of this court, nor can innocent third persons purchasing upon the faith of the public records be bound by any knowledge except such as is disclosed by such records. Baird v. Atlas Oil Co., 146 La. 1099, 84 South. 366; McDuffie v. Walker, 125 La. 167, 51 South. 100; Waller v. Colvin, 151 La. 772, 773, 92 South. 328.

[13] Neither fraud, nor want of consideration, nor secret equities between the parties, who have placed on the public records a title valid upon its face, can be urged against a bona fide purchaser for value, who has acted on the faith of such recorded title. Broussard v. Broussard, 45 La. Ann. 1085, 13 South. 699; Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162; Succession of Guillory, 29 La. Ann. 495; Chaffe v. Ludeling, 34 La. Ann. 967.

[14] As the public sale was made under the decree of a court of competent jurisdiction, and as said sale, authentic in form, declares that the same was made by the tutor for a cash consideration of $8,000, that the purchase price was more than the inventoried value of the property, that Mrs. John B. Richmond was the adjudicatee, and the last and highest bidder, and that she was authorized by her husband, innocent third purchasers cannot be affected by the following attacks made upon said public sale: (a) That no price, cash or otherwise, was paid; (b) that the adjudication and sale was not made by the tutor but by a third person; (g) that the adjudicatee, petitioners' mother, was not present at said sale, and that her husband was without authority to bid in the property; (h) that the tutor was without authority to sign a procès verbal of adjudication before the price was paid, and that it was his duty to readvertise and again offer the property according to law, and that the execution of such procès verbal and of such deed was a fraud upon the rights of petitioners; (i) that John B. Richmond bid in said property in the name of petitioners' mother, in order to stifle competitive bidding, and in order to make good on warranty of two previous void private sales to S. M. Scott, and that this was his pretense for bidding $8,000, or more than twice the appraisement.

[15] All of these attacks are made upon alleged facts dehors the public records, and cannot affect third innocent purchasers. It is not true, as contended by counsel for plaintiffs, that, where the family meeting and order of court direct that a minor's property be sold for cash and no price is paid, the sale is null and void ab initio, and no title passes to the adjudicatee, in the sense that there is no adjudication at all.

"The adjudication * * * has, of itself alone, the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudged." C. P. art. 690.

"This act of sale adds nothing to the force and effect of the adjudication, but is only intended to afford the proof of it." C. P. art. 695.

"This adjudication is the completion of the sale; the purchaser becomes the owner of the thing adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract of sale." R. C. C. art. 2608.

It is true that article 689 of the Code of Practice declares that, "if the person to whom the property has been adjudged shall refuse to pay to the sheriff the price of the adjudication, * * * the sheriff shall expose to sale anew the thing seized," but in the case of Doll v. Kathman, 23 La. Ann. 486, this court said:

"The defendant, it is charged, has never paid any part of the price of the property, and it is not shown that he has. It is argued on the part of the plaintiffs that, never having paid for the property, he is not the owner of it. It is not shown, however, that the heirs or any person authorized have ever made any demand of payment, or that the defendant has been put in default, a condition precedent to the right of the plaintiffs to recover."

In the case of McCall v. Irion, 41 La. Ann. 1126, 6 South. 845, after considering numerous authorities the court announced that—

"The underlying principle will be found to be that the purchaser must be first called upon to comply with the terms of the sale and pay the price, and must be shown to have refused so to do. In such a case, his refusal, or declination, is treated as a mere passive violation

of a contract, the enforcement of which must be preceded by a default, as a condition precedent."

[16] Prior to the institution of this suit no demand had been made upon the defendant Mrs. Mary L. Richmond for the payment of the purchase price, and no suit had been instituted against her to enforce the payment or to dissolve the sale for nonpayment. Her rights under the adjudication were not divested by the mere failure to pay the purchase price, and, long prior to the present suit, had been acquired by the defendants, who have purchased various lots from the adjudicatee, and have gone into the possession of same, and have erected thereon valuable improvements. As to this property, plaintiffs are clearly without any right of recovery.

As Mrs. Mary L. Richmond claims no rights under the adjudication made to her, and as she has filed no answer in the case, plaintiffs are entitled to recover the property acquired by her under said adjudication and still standing in her name as owner, since she admits that no cash, or other consideration, was paid for same as the price of adjudication made to her at the public sale on August 24, 1913. Mrs. Richmond does not hesitate to confess that she well knew that the lots sold by her to Dr. S. M. Scott, for a cash consideration, on April 17, 1912, and on May 2, 1912, were not her property, and that her vendee acquired no title. Dr. Scott, on discovering that his title was defective, as the property conveyed to him by Mrs. Richmond belonged to her minor children, demanded of her either a return of the purchase price or a valid title, and referred her and her husband to the firm of Blackman, Overton & Dawkins, reputable and able attorneys, in an effort to obtain a valid title to the property for which he had paid by proper and legal court proceedings. The evidence fails to establish, in our opinion, that Dr. Scott was connected in any way with any agreement between the tutor and Mrs. Richmond and her husband to bid in this property, and to have a deed executed to Mrs. Richmond, without the payment of any consideration, in fraud of the rights of the minors, or that he was a party to any conspiracy not to bid on the property, in order to prevent competitive bidding, to the injury of these minors. While Mrs. Richmond attempts in her testimony to charge Dr. Scott with such knowledge as would indicate some degree of bad faith, his testimony denying the imputation was accepted as trustworthy by the trial judge, and we do not find any good reason for arriving at a different conclusion, since the interest of Mrs. Richmond in the result of this case is apparent from her testimony and from her failure to defend this suit against herself.

The transfer made to Dr. Scott by Mrs. Richmond, after the public sale, of certain lots in Oakdale, for a consideration of $1,000, and his transfer to her of lots which she had illegally sold to him, for a similar consideration, not only placed the title of these lots back in the name of Mrs. Richmond, and enabled the plaintiffs to recover the same as a part of the separate estate of their father, but operated as giving to Dr. Scott a valid title for the purchase price already received by Mrs. Richmond, who had become the adjudicatee of this property at public sale.

Even if the sum of $1,000 had not been paid by Dr. Scott to Mrs. Richmond, it cannot be said that no consideration was received by her for this transfer at the time, and that the transaction was in reality an exchange, as the consideration had already been received by her under the former illegal sale made by her to Dr. Scott, and there was no necessity that he should pay her twice for the property in order to obtain a valid title, when she at the time was the record owner by virtue of the public sale made to her.

Dr. Scott, being in good faith in this transaction, must necessarily stand in the same shoes, as to his title, as the other defendants in the case.

The judgment rendered, after a new trial granted, merely permitted plaintiffs to recover, in addition to the property recovered by them and described in the original judgment, lot 17, and a strip 12 feet wide off the south side of lot 18, by the depth of said lot, in block 5, east of Eighth street, subject to the rights, if any, acquired by the town of Oakdale under any act of dedication. None of the property recovered by plaintiffs had been conveyed by Mrs. Richmond after the adjudication; the title remaining in her name. The adjudication and sale to Mrs. Richmond was annulled and declared void and of no effect as to the property recovered by plaintiffs, and the demands of plaintiffs as to all other defendants, except as against Mrs. Richmond, her husband, and the town of Oakdale, were rejected. Mrs. Richmond and her husband were condemned to pay the costs, and the rights of plaintiffs to proceed against them and against their tutor, Narcisse Guillory, as reserved in the petition, were recognized.

The judgment appealed from is in our opinion correct, and it is affirmed.

Rehearing refused by Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.