YARRUT, Judge.
This is an appeal by Plaintiff-Appellant from a judgment of the district court maintaining Defendants’ exceptions of no cause or right of action and the dismissal of his suit.
After Defendants appeared and filed their exceptions, the district court, upon ex parte motion by Plaintiff, and without notice to Defendants, permitted Plaintiff to dismiss his suit without prejudice.
Promptly upon receipt of notice of dismissal, Defendants moved for the setting aside of the order of dismissal, which the court granted over objection of Plaintiff. The court then decided the case on the exceptions and dismissed Plaintiff’s suit.
Plaintiff contends the court was without right, after permitting him to dismiss his suit, to reinstate it and render judgment on the exceptions.
We agree that, in setting aside the order of dismissal, granted on the ex parte motion of Plaintiff, the district judge properly exercised his judicial discretion, since he concluded he was in error in allowing Plaintiff to dismiss his suit without notice to Defendants.
LSA-C.C.P. art. 1671 is controlling here. It reads:
“A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to a general appearance by the defendant.. If the application is made after a general appearance, the court may refuse to grant the *352 judgment of dismissal except with prejudice.”
It is conceded that, if the application for the voluntary dismissal, without prejudice, was made prior to a general appearance by the Defendants, the Plaintiff was entitled to dismiss his suit as a matter of right; otherwise, the district judge has discretion as to its disposition. The Defendants had made a general appearance by filing peremptory exceptions. LSA-C.C.P. art. 7.
LSA-C.C.P. art. 1671 provides the court, in its discretion, may grant a motion by Plaintiff to dismiss his suit after a general appearance by Defendants. The district judge in recalling his dismissal, stated he made a mistake when he inadvertently. granted Plaintiff’s ex parte motion, thus reinstating Plaintiff’s suit.
On the merits of Defendants’ various exceptions, recited above, the record shows:
This is a Declaratory Judgment suit filed by Plaintiff-Appellant, on June 11, 1964, to be declared the owner of a one-sixth interest in a large tract of land (157 arpents) in Jefferson Parish, more than 12 years (November 10, 1951) after he executed and recorded in the conveyance records of Jefferson Parish an authentic notarial act wherein, after first acknowledging he had no interest in the property described, then conveyed whatever interest he might have to his uncle, Grantland L. Tebault.
The documentary evidence shows that the tract of land was acquired by Plaintiff’s grandfather, Christopher H. Tebault, on February 11, 1869. The grandfather died in 1914, survived by his widow, Sallie Bradford Bailey Tebault, and three children, Grantland L. Tebault, Dr. Christopher H. Tebault, Jr. and Mrs. Corinne S. Tebault Harper, the latter being the mother of the present Plaintiff.
In 1924 the widow (Mrs. Sallie Bailey Te-bault) conveyed her full interest to her two sons, Grantland L. Tebault and Dr. Christopher H. Tebault, Jr. In 1930 Dr. Christopher H. Tebault, Jr. conveyed his full interest to Grantland L. Tebault, vesting in Grantland L. Tebault ownership of an undivided Y interest in this property. Grantland L. Tebault, by dation en paiement in 1951, conveyed to his wife, Mrs. Amanda Chamberlayne Tebault, his Y interest. As to the remaining (4 interest outstanding of record, on November 10, 1951, Plaintiff then executed the instrument which he now seeks to set aside. All transfers recited above were properly recorded in Jefferson Parish. The transfer of the 54 interest by Plaintiff was by authentic act and was executed before Edward Haspel, Notary Public, in which Plaintiff declared:
(1) That by judgment dated September 20, 1937, he had been recognized as the sole lieir of his mother, Mrs. Corinne Tebault Harper,
(2) That his mother “has received as advances all sums and property which might have been due her as an heir of her father, which sums and property she would have been required to collate in the settlement * * * ” of the grandfather’s estate,
(3) That he, appellant, therefore acknowledged that he had no interest whatsoever in the estate of his grandfather, and more particularly, no interest whatsoever in the property (clearly described in the instrument) which is the subject of this law suit, and,
(4) That appellant assigned and transferred to Grantland L. Tebault his full interest, “insofar as it may be determined that appearer (appellant) has an interest” in said property.
This instrument particularly describes the 157 arpent tract of land.
The Celotex Corporation then purchased from Grantland L. Tebault his undivided 54 ownership, and the undivided Y ownership in Mrs. Amanda Tebault, by act of December 5, 1951, both properly recorded. *353 These acquisitions comprised all 157 arpents in the tract except the rear eight arpents, title to which remained in Mr. and Mrs. Te-bault.
On January 20, 1956, Plaintiff, by authentic act, after first acknowledging again that he had no interest in the estates of his maternal grandparents, conveyed and assigned, for the sum of $2,500.00, to Virginia Cham-berlayne Francis his full interest, whatever it might be, in and to all property, in which he might have an interest as an heir of his mother, or either of his maternal grandparents, or any other property, the title to which emanates from the successions of his maternal grandparents. The transferee, under the last recited deed, an appellee herein, was the universal legatee of Grantland and Amanda Tebault, and thereby the owner of the rear eight arpents mentioned above.
In 1963 and 1964 the Celotex Corporation began to convey portions of this land to various purchasers. On December 6, 1963, a portion of this property was conveyed to Donald A. Bousquet and Fabian G. From-herz. On April 27, 1964, another portion was conveyed to Charles S. Potter. These purchasers, appellees herein, acquired from Celotex in good faith and in reliance on the public records. Other portions of the Celo-tex tract were conveyed in 1959 to the Jefferson Parish School Board and, in 1964, to Quintet Oil Company, Inc. However, these two purchasers were not joined as Defendants. On June 11, 1964, while Plaintiff was a citizen of the state of Mississippi, this law suit was commenced in the Parish of Jefferson, in which the Celotex Corporation, Donald A. Bousquet, Fabian G. From-herz, Charles S. Potter and Virginia Cham-berlayne Francis were made Defendants.
In his original petition Plaintiff set forth the reasons for which the Court should set aside his authentic act of 1951, completely ignoring the existence of the 1956 conveyance, viz.:
(a) The Plaintiff now alleges he received no consideration for the 1951 instrument in favor of his uncle, and,
(b) Appellant alleges he was persuaded to acknowledge he had no interest whatsoever in the land because of the “ * * * dominion and influence * * * ” of said uncle, who, according to appellant, apparently failed to comply with an alleged promise that appellant “ * * * would be named as a legatee of said uncle * * * ”
Defendants filed peremptory exceptions of no right of action, no cause of action, liberative prescription and acquisitive prescription. The exception of no right of action, more properly titled an exception of “want of interest,” was based upon the second quitclaim of 1956, in which the appellant had sold to Virginia Chamberlayne Francis whatever right he might have had to bring this action.
On January 20, 1965, Plaintiff filed another proceeding in the U. S. District Court for the Eastern District of Louisiana, alleging the same facts, seeking the same relief, accompanied by a notice of lis pen-dens filed in Jefferson Parish.
On the day the exceptions were to be argued in the Jefferson Parish court, Plaintiff moved to stay his state suit in favor of the federal suit, which the court denied.
On February 16th, Defendants, for the first time, received by mail, notice of judgment of dismissal of Plaintiff’s suit.
Upon Defendants’ motion the order of dismissal was set aside and the case heard on Defendants’ exceptions, which were sustained (exceptions of no right or cause of action) and Plaintiff’s suit dismissed.
Plaintiff contends that his deceased uncle, the universal legatee of the Tebaults, Miss Francis, The Celotex Corporation and the two law firms representing the latter two parties, all at different times and in different ways, either misrepresented facts to appellant, withheld material facts from him, induced him to error, or somehow defrauded him; that the District Judge erred in failing to allow parol testimony that would *354 contradict and radically alter the terms of the authentic acts he had signed. In Plaintiff’s original petition, the only bad faith he alleged was directed against his own deceased uncle.
After the filing of Defendants’ exceptions, based upon the fact that Defendants were good faith purchasers and thereby protected by the public records, Plaintiff filed an amended petition alleging that, in his opinion, all Defendants were in bad faith in taking title, in that a proper evaluation of the public records should have put them on notice of something. Now, in this Court and for the first time, the charge of bad faith and fraud is extended to the 1956 act which appellant declares he executed “in error.”
Plaintiff’s attack on the 1951 act is that his mother received nothing from her father because neither his mother’s succession nor the grandfather’s succession reflect any such “advances,” so that:
(1) His quitclaim of -1951 is null and void, because,
(2) His declaration in both quitclaims that his mother received as “advances” all that she was entitled from her father’s estate was an erroneous declaration, because,
(3) The “advances” received by his mother cannot be proven by either her succession proceeding or the succession proceeding of either of her parents.
The conclusions stated in (1) and (2) above, cannot be established with number (3) as a foundation. His mother could have received and disposed of the cash, securities, bonds or other movable property, advances, received during her lifetime, from her parents.
Why the “advances” received by Plaintiff’s mother should appear in the succession of either of his mother’s parents we cannot understand. Plaintiff insists that “there is nothing in any of the records” to prove these advances which he twice acknowledged did exist.
Regarding the exception of no right of action, State ex rel. Adema v. Meraux, 191 La. 202, 184 So. 825 and Ritsch Alluvial Land Co. v. Adema, 211 La. 675, 30 So.2d 753, are controlling on this point. Both involved the same litigants; the plaintiff filed suit against three defendants to annul a tax sale to them. An exception of no right of action was maintained when it was proven that plaintiff had quitclaimed all of its interest in the land to another party four months prior to filing the suit against the defendants. On these facts the court held that the plaintiff “is not, and never was, a proper party plaintiff,” and maintained the exception of “want of interest or no right of action.”
This holding was affirmed again by the Supreme Court in Wischer v. Madison Realty Co., 231 La. 704, 92 So.2d 589. In a per curiam on rehearing, the Court distinguished its holding in the Ritsch and Meraux cases, to wit:
“This case is clearly distinguishable from the Ritsch Alluvial Land Co. case, which was before us on two occasions. In that matter, the exception was based on the fact that plaintiff had sold the land involved to its co-plaintiff, a corporation named Lenmark Lands, Inc. Therefore, defendant was entitled to assert, in limine litis, that plaintiff was without interest in litigating with him the issue of title.” 92 So.2d at 592.
Plaintiff’s contention that the fail•ure to describe the Jefferson Parish real estate with particularity made the 1956 quitclaim ineffective, is contrary to the holdings in Williams v. Bowie Lumber Co., 214 La. 750, 38 So.2d 729; O’Meara v. Broussard, La.App., 162 So.2d 777; Wolf v. Carter, 131 La. 667, 60 So. 52; Roberts v. Medlock, La.App., 148 So. 474; the latter two decisions being to the effect that an interest in a succession may be sold, includ- *355 mg' title to real estate, without a particular description of the real estate.
On the question of recordation of this quitclaim in Jefferson Parish, in the case cited below, the court held:
“If the plaintiff has sold the land, the subject matter of this litigation, and has evidenced the sale by a written instrument, it has divested itself of title even though the instrument has not been recorded. Therefore the fact that the instrument has not been recorded is not material, because the purpose of introducing it was not to establish title but to show want of title in the plaintiff.” State ex rel. Adema v. Meraux, 191 La. 202, 184 So. at 827.
Regarding the exception of no cause of action: it was maintained by the lower court on the ground that Defendants were third-party purchasers, acting in good faith, relying upon title recorded in the conveyance records, against which the secret equities existing between Plaintiff and his transferee, his uncle, could not prevail; that Plaintiff had no legal right to testify on the trial of the exception of no cause of action. LSA-C.C.P. art. 931 reads, in part:
“No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.”
On the face of Plaintiff’s petition, it is apparent that all of the Defendants acquired their titles after the recordation of the instrument, which Plaintiff now attacks, and in reliance on the public records; yet Plaintiff insists that all those who acquired after the 1951 quitclaim should have evalued that instrument so as to conclude that Plaintiff was not, in fact, divesting himself.
“If a suit be brought to set aside a conveyance obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside, as between the parties; but the rights of third persons, who are purchasers without notice, for a valuable consideration, cannot be disregarded. Titles which, according to every legal test are perfect, are acquired with that confidence which is inspired by the opinion that the purchaser is safe. If there be any concealed defect, arising from the conduct of those who had held the property long before he acquired it, of which he had no notice, that concealed defect cannot be set up against him. He has paid his money for a title good at law, he is innocent whatever may be the guilt of others, and equity will not subj ect him to the penalties attached to that guilt. All titles would be insecure, and the intercourse between man and man would be very seriously obstructed, if this principle be overturned.” Fletcher v. Peck, 6 Cranch 87, 132-133, 3 L.Ed. 162 (1810).
Regarding the exceptions of no right or cause of action, allegations with respect thereto could not be proved because the alleged facts are not of record and could not avail Plaintiff, even if true, against innocent third persons who relied on public records. In Cole v. Richmond, 156 La. 262, 100 So. 419, 423, the court stated:
“The conveyance records are the only thing to which one dealing with real estate needs to look, under the repeated decisions of this court, nor can innocent third persons purchasing upon the faith of the public records be bound by any knowledge except such as is disclosed by such records. Baird v. Atlas Oil Co., 146 La. [1091] 1099, 84 South. 366; McDuffie v. Walker, 125 La. [152], 167, 51 South. 100; Waller v. Colvin, 151 La. [765], 772, 773, 92 South. 328.
"Neither fraud, nor want of consideration, nor secret equities between the parties, who have placed on the public records a title valid upon is face, can be urged against a bona fide p%ir-chaser for value, who has acted on the faith of such recorded title. Broussard v. Broussard, 45 La.Ann. 1085, 13 *356 South. 699; Fletcher v. Peck, 6 Cranch, 87, 3 L.Ed. 162; Succession of Guillory, 29 La.Ann. 495; Chaffe v. Ludeling, 34 La.Ann. [962] 967.” (Emphasis added.)
In Schwing Lumber & Shingle Co. v. Arkansas Natural Gas Co., 166 La. 201, 116 So. 851, 852, the Supreme Court said:
“At the time the act of sale was executed from Molbert to Munce, the property conveyed was unencumbered, and Molbert appeared on the public records as its sole owner. Third persons had the right to deal with it on the faith of the records.
‘Neither fraud, nor want of consideration nor secret equities between the parties, who have placed on the public records a title valid upon its face, can be urged against the bona fide purchaser for value, who has acted on the faith of such recorded title.’ Cole v. Richmond, 156 La. 262, 100 So. 419, 423, and authorities cited.
‘One who has signed a deed transferring an immovable cannot set up against a third party, who has acquired on the faith of the records, title, that he signed the deed in error, * * ■* as things outside of the deed cannot be pleaded against such third persons.’ Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528, and authorities cited.”
Hughes v. Morrissey, 169 La. 176, 124 So. 772; Breaux v. Royer, 129 La. 894, 57 So. 164, 38 L.R.A. (N.S.) 982; Duson v. Roos, 123 La. 835, 49 So. 590; Harris v. United Gas Public Service Co., 181 La. 983, 160 So. 785.
In conclusion, we fully agree with the conclusions of the district judge, which he clearly supported in his reasons for maintaining Defendants’ exceptions, and adopt them as. our own, viz.:
“Exceptions of no cause or .right of action, non-joinder of necessary party defendant, and pleas of prescription were filed against the plaintiff’s action for a declaratory judgment decreeing his written and duly recorded acknowledgment of the want of interest in the estate of Dr. Christopher Hamilton Tebault, and his quitclaim of any potential interest or right therein to Grantland Lee Tebault, dated November 10, 1951, to be null and void. The petitioner also seeks to be recognized and decreed the owner of an undivided one/sixth (%) interest in and to a certain tract of land, originally forming part of the estate of Dr. Christopher H. Tebault, and acquired under various titles by the defendants.
“The recordation of the authentic act, executed by the plaintiff, on November 10, 1951, which acknowledged that he had no interest in the estate of Dr. Christopher H. Tebault and in addition, specifically transferred and quit claimed any interest, actual or potential, which he might have in the corpus of this estate, to Grantland Lee Tebault, produced the legal consequences of completely divesting Mr. Harper of the right to maintain any proceeding having as its object the recognition of any claim arising by virtue of his legal capacity as an heir of his mother or of Dr. Christopher H. Tebault. The recordation of this instrument constituted a declaration to the public that the plaintiff had no valid, legal interest or unsatisfied right in the property comprising the estate of Dr. Tebault, a part of which was acquired by the defendants. It further represented and confirmed that any potential or pretended interest was transferred and quit claimed to Grantland Lee Tebault and that third-party purchasers, in good faith, could confidently rely upon the public records, in negotiating with the recorded owner for the acquisition of this property, free *357 from the assertion of any claims of invalidity predicated upon undisclosed circumstances or facts.
“If any doubt existed as to the complete divestiture of plaintiff’s interest in the property, resulting from the aforegoing acknowledgment and quit claim, it was forever set at rest by the subsequent quit claim, dated January 20, 1956, executed by the plaintiff in favor of Virginia Chamberlayne Francis for a consideration of $2,500.00. This instrument, which was in authentic form and duly recorded, reflected a total and complete transfer of all rights enuring to the plaintiff in his capacity as an heir.
“The intent of both of these documents is clear and unambiguous and for this reason, the Court did not permit tlie plaintiff to introduce any testimony purportedly to explain their intent but which in truth or fact, would actually alter and contradict their written terms. These two instruments completely divest Mr. Harper of any right, title or interest in the realty forming the subject of this suit and therefore, under the jurisprudence of this state, he has no right, sufficient in law, to maintain this action.
“As regards the exception of no cause of action, the Court is of the opinion that it is well-founded in law and should be maintained. The defendants were third-party purchasers acting in good faith, relying upon valid titles duly recorded in the conveyance records of this parish. Any secret equities or other undisclosed rights existing between the plaintiff and his transferees under the aforementioned quit claims, cannot prevail against the recognition of the validity of the defendants’ title.”
Conceding, arguendo, that Plaintiff’s petition alleged a right of action, yet it does not state a cause of action, since none of his alleged complaints are susceptible of proof except by parol evidence, which is not admissible here. Accordingly, it would serve no purpose other than delay, to remand the case to the district court as was done in Wischer v. Madison Realty Co., cited supra.
Judgment of the district court is affirmed ; Plaintiff to pay all costs in both courts.
Judgment affirmed.